## CHANCE *vs.* ISAACS & SMYTH.

Where C. received a negotiable note from I., payable at a future day, which he endorsed and passed away in the ordinary course of business, and I. held two negotiable notes against C. for about the same amount, which were payable a short time after the note which he had originally given to C. became due ; and before any of the notes became due, I. became insolvent and made an assignment for the benefit of his creditors, which assignment included C.'s notes, which were endorsed and transferred to the assignee, and C. was afterwards compelled, as endorser, to pay and take up the note originally given to him by I. ; *Held,* that C. could not in equity offset the note so taken up by him against his own notes in the hands of the assignee. *Aliter,* if C. had been the owner and holder of I.'s note at the time of the assignment for the benefit of his creditors ; as the circumstance of the note not being due would not have impaired C.'s equitable right to a set-off in such a case.

March 15.    THIS was an appeal from a decree of the vice chancellor of the first circuit.    The facts, as they appeared from the bill and answer, were as follows :   The defendant Isaacs, in September, 1833, being indebted to the complainant in the sum of $687,28, gave to him a negotiable note for that amount, payable four months after date ; which note the complainant, soon after, endorsed and transferred to a third person, in the ordinary course of business.   Sometime afterwards the complainant became indebted to Isaacs in about the sum of $700, for which he gave him two promissory notes, payable at four and six months.    A few days before the note of Isaacs fell due, he became insolvent and made an assignment of his property to the defendant Smyth, for the benefit of his creditors, including the two notes of the complainant.    When the note given to the complainant fell due, it was protested for non-payment, and the complainant, as the endorser, was obliged to pay and take it up.    He therefore filed his bill in this cause to restrain the defendant Smyth from parting with the two notes given to Isaacs, and to have the note of Isaacs offset.    The vice chancellor decided that the offset could not be allowed, as the creditors, under the assignment, had acquired an interest in the notes of the complainant before the note given to, and endorsed by him, had been protested for

non-payment and taken up by him. The bill was therefore dismissed, with costs.

*S. Stevens & J. Edwards,* for the appellant. If Isaacs still had possession of the two notes given by the complainant, his insolvency would be a sufficient ground for this court to grant the relief prayed for by this bill. (*Lindsay* v. *Jackson & McJimpsey, 2 Paige's Rep. 581.*) Equity and justice require that Isaacs should not be permitted to negotiate the notes which he holds against the complainant, and thereby compel him to pay them, when he owes the complainant nearly the same amount which he is unable to pay.

The defendant Smyth stands in no other or better situation than Isaacs. If Smyth is to be deemed as representing the creditors of Isaacs, then those creditors cannot resist an equity in this case which could be enforced against Isaacs. They stand in his place. If these notes had been assigned directly to a creditor, in payment of a precedent debt, there being no new consideration, such creditor would not be deemed a bona fide holder of the notes ; and the complainant's equity being prior, would prevail. (*Rosa* v. *Brotherson, 10 Wend. R. 85.*) That the assignment is in effect to all the creditors of Isaacs, cannot take the case out of the above principle. It appears, by the assignment and schedules annexed, that Smyth, the assignee, was fully apprised of all these facts at the time he took this assignment. The knowledge of Smyth is knowledge to those for whom he received the assignment. Such a transaction by an individual creditor would have been deemed a fraud upon the complainant. Is the character of the transaction altered by Smyth's taking the assignment for all the creditors ?

*J. Rhoades,* for the respondents. The assignment from Isaacs to Smyth was valid at law and in equity. The notes from Chance to Isaacs were in terms embraced in it, and passed by it to Smyth before the note from Isaacs to Chance became due and payable, and at a time too, when, by the complainant's own showing, he was not the holder or owner of that note.

The complainant has not renounced or disclaimed any interest in the assigned property. By not doing so, he has vir-

tually and by implication sanctioned the trust. He ought to have disavowed the proceeding before he filed his bill. An essential to a right of set-off (mutuality of indebtedness) did not exist between Isaacs and Chance at the time of the assignment of the notes of Chance to Smith. (*Miller* v. *The Receiver of the Franklin Bank,* 1 *Paige's Rep.* 445.) The effect of the doctrine contended for by the complainant would be to enable creditors of the insolvent, in every case of assignment, where their claims were greater than their indebtedness, to insist on a set-off to the full extent of such indebtedness, and then to come in rateably with other creditors upon the assigned fund, for the balance due or to become due to them.

The decree of the vice chancellor was correct, and should be affirmed, with costs; but in no event should Smyth be personally charged with the complainant's costs, or his own, as he is clearly litigating in good faith, and in discharge of a duty which he owes to others.

THE CHANCELLOR. It is now well settled that a person who receives a negotiable promissory note from the payee, out of the usual course of business, or in security for an antecedent debt, and not for a present consideration, such as the payment of money, the delivery of goods, or the relinquishment of an existing security, takes it subject to all the equities which existed against it in the hands of the former holder. And this principle applies with peculiar force to the voluntary assignee of an insolvent debtor, who receives negotiable paper from the assignor, under a general assignment for the benefit of creditors. In the present case, therefore, if the complainant had been the holder and owner of the note of Isaacs at the time this assignment was made, I should have no hesitation in declaring that Smyth took the assignment of the complainant's two notes, subject to the equitable right of the latter to have the note given to himself set-off against them. Although this note was not due at the time of the assignment, yet, as it would become due long before the complainant's notes were payable, an equitable right of set-off would have then existed, which it would have been uncon-

scientious on the part of Isaacs to deprive him of, by assigning the complainant's notes to other creditors. I think the principle of the case of *Lindsay* v. *Jackson & McJimpsey*, (2 *Paige's Rep.* 581,) would have sustained an equitable set-off in such a case, where the assignor was insolvent, although neither of the notes had become due at the time of the assignment. The assignment is dated the 30th of January; but as the defendants, in their answer, have sworn it was made on the 18th, and the complainant has thought proper to.go to hearing on bill and answer, without giving them an opportunity to prove that fact, this allegation in the answer must, for the purposes of this suit, be taken to be true, however improbable it may appear to be. And as this note did not belong to the complainant at the time of the assignment, although he was contingently liable for the payment thereof, I am satisfied the vice chancellor was right in supposing that no equitable right of set-off then existed which attached to the complainant's notes, in the hands of the assignee. There were neither mutual debts, nor mutual credits which by the efflux of time would necessarily ripen into mutual debts, existing between Chance and Isaacs at the time of the assignment. In the case of *Lindsay* v. *Jackson & McJimpsey* there were mutual credits which would have formed proper subjects of set-off in bankruptcy, or under the insolvent acts. (*Ex parte Prescott*, 1 *Atk. Rep.* 230. *Atkinson* v. *Elliott*, 7 *Term Rep.* 378.) But, in a case similar to the one now under consideration, Lord Rosslyn decided that the endorser of a bill of exchange which was accepted by the bankrupt, and which had been taken up and paid by the endorser, subsequent to the act of bankruptcy, could not be set-off against a debt due from him to the bankrupt at the time of the issuing of the commission. (*See Ex parte Hall*, 3 *Vesey's Rep.* 304.)

The decree of the vice chancellor must therefore be affirmed, with costs; but without prejudice to the complainant's right of set-off at law, if the assignment was not in fact made, and accepted by Smyth, before the note endorsed by the complainant was paid and taken up by him as such endorser.