SWORDS and others, Receivers of the Washington Insurance
Company of the city of New York v. BLAKE and others.

---

B. insured premises with the W. Insurance Company, and assigned his poli-
cies to his mortgagees. He, at this time, had obtained loans from the com-
pany and mortgaged to them other premises than those insured. The com-
pany became insolvent by the great fire; and, under the statute of 18th
January, 1836, gave negotiable certificates of amount of loss, and received
their policies. These certificates were made out and delivered to B. and he
endorsed and handed them to his mortgagees in substitution for the policies.
The receivers of the company foreclosed (upon the two mortgages) against
B., and he claimed set-off to the amount of the certificates: *Held*, that as
the title to the certificates was in B.'s mortgagees, as the policies also had
been, he had no such right of set-off, but must come in *pari passu* with
other creditors.

---

*May* 17,
1837.

*Mortgagor
and mort-
gagee.
Insurance
money.
Set-off.*

BILL to foreclose two mortgages made by the defendants,
Anson Blake and wife, to the Washington Insurance Company
of the city of New-York. One of the mortgages was for six
thousand dollars and the other for ten thousand dollars—both
of them on property in the twelfth ward of the city of New
York. The first of the mortgages was paid down to three
thousand five hundred dollars on a part of the mortgaged pre-
mises being released.

On the fifteenth of September, one thousand eight hundred
and thirty-five, the premises embraced by the first mortgage
(except such part as had been released) were conveyed to
Isaac Adriance, subject to the mortgage, with a covenant in
the conveyance that the said Isaac Adriance would pay off the
principal and interest.

On the second day of May, one thousand eight hundred and
thirty-six, the premises embraced by the second mortgage
were conveyed to the said Isaac Adriance, subject to the mort-
gage, with a covenant that Blake would pay off the principal
and interest.

Between the dates of these conveyances, namely, on the
twelfth of February, one thousand eight hundred and thirty-six,
the Washington Insurance Company having been rendered in-

solvent by the great fire of the sixteenth and seventeenth days of December, one thousand eight hundred and thirty-five, the complainants were appointed receivers of the said company.

At the time of this great fire, the defendant, Anson Blake, had two stores, known as No. 135 Pearl street and 27 Exchange place, insured with the said Washington Insurance Company for seven thousand dollars, and the policy went into the hands of William Turnbull, by assignment, with the consent of the insurers as collateral security for a loan on a bond and mortgage of the stores. The said defendant, Anson Blake, also had a store No. 127 Pearl street, New York, insured with the company for four thousand dollars, and the policy went into the hands of Henry Andrew and Lucinda Benton, executrix and executor of Thomas Benton deceased, by assignment, with the consent of the insurers, as collateral security for a loan on a bond and mortgage of this store.

The premises so insured to Blake were destroyed by the great fire and, after the appointment of receivers, the usual certificates of amount due for loss were made out in the name of the defendant Blake, and endorsed by him and delivered to the said Henry Andrew and Lucinda Benton and William Turnbull respectively in exchange for the policies, which were delivered up to the complainants.

It was at this time ascertained by all parties that the assets of the company would not be sufficient to pay all the creditors in full.

Neither the mortgage made by Blake to the executors of Benton nor that executed to William Turnbull was paid or cancelled until after the commencement of the present suit.

Both the mortgages that had been made to the company became due on the first day of January, one thousand eight hundred and thirty-six; while the certificates of loss were delivered some time afterwards.

The present bill, to foreclose the mortgages, was filed on the fifteenth day of June, one thousand eight hundred and thirty-six.

The defendant, Blake, claimed that he was entitled to set off his claims to the amount of the policies against so much of the amount of the two mortgages; and that he or Adriance, his grantee, was only bound to pay the balance.

1837.

SWORDS
*v.*
BLAKE.

The complainants insisted that they were entitled to the usual order of reference to compute the amount due on their mortgages; and that the defendant Anson Blake was only entitled to receive his *pro rata* dividend on the certificates in like manner with other creditors of the company.

Mr. *Schieffelin*, for the complainants.

——————————, for the defendant Anson Blake.

THE VICE-CHANCELLOR :—If the defendant Blake had remained the holder of the policies of insurance, when the losses under them by the fire occurred, there can be no doubt that he would have had a right to set off the amount of those losses against his bond debts to the company; and that right would not have been taken away by the appointment of receivers or trustees of the company's effects. One branch of the chancellor's decision in *Holbrook and Fermes' case*, (6 Paige's C. R. 220,) is to that effect. But, at the time of the fire and also at the time of the appointment of receivers, by which all the property and effects of the insolvent company became vested in the receivers, the policies of insurance were outstanding in the hands of third persons, to whom they had been assigned, with the consent of the company; and though assigned for a particular purpose and subject to redemption, the legal title to the policies and the right to collect and receive the moneys accruing upon them were vested in and belonged to the then holders. Now, under what has been sometimes termed the more extensive right of set-off, as against assignees in bankruptcy, trustees of insolvents' estates and in cases of mutual credit or where mutual debts exist, (2 R. S. 47, sec. 36,) and which, by express enactment is made applicable to receivers of insolvent corporations, a set-off may, in some cases, be enforced in equity, although it could not strictly be enforced at law; yet this right is restricted to debts or demands owing to the party claiming the set-off before the appointment of trustees: 2 R. S. 41, sec. 7; and, Ib. 47, sec. 37.

It appears to me, the defendant can hardly be considered the owner of the claim or demand upon the policies at that time. But, if he could be so considered under the circum-

stances, another difficulty presents itself to my mind, in relation to the right which he claims, to set off the whole amount.

The demand no longer exists upon the policies of insurance. These instruments have been surrendered to the receivers and cancelled; and the defendant has accepted, in their place, the negotiable certificates of the receivers, under the third section of the act of the 18th January, 1836, admitting the amount of the losses upon the policies and declaring the amount to be payable in dividends rateably with all other claims upon the company out of the general assets which had or should come to their hands. Having accepted the certificates—and even supposing the defendant had never parted with the possession or any interest of his own in them—has he not precluded himself from claiming payment in any other way and to any greater extent than is there specified?

The great object of the statute, in requiring receivers to issue certificates, was not merely to show that the losses upon policies were adjusted at certain amounts, but to enable the holders to anticipate the proceeds of their insurance and to facilitate their borrowing money upon the strength and credit of this new kind of negotiable paper. It was not compulsory upon the defendant to receive certificates. The loss upon the policies might have been adjusted and the assured still have held the policies and claimed payment upon them according to the terms of the original contracts; and if he meant to gain an advantage over the creditors generally, by setting off the whole amount of a debt owing by the company, he should not have taken out certificates for *pro rata* payments only. By doing this, he appears to have put himself upon a like footing with the other creditors; and I think he must now be content to share equally with them and not be allowed to obtain a preference or satisfaction to a greater extent than other creditors.

There is still another difficulty in the way of a set-off in the present case. The certificates issued by the receivers to the defendant were immediately endorsed by him over to the persons who previously held the policies, and were held by them until after the commencement of the present suit. True, they were held in pledge or as collateral security, in like manner as the policies were held for pre-existing debts, and with a

right of redemption in the defendant; but the legal title had passed and the right to collect or receive the money payable upon the certificates was vested in the holders by virtue of endorsement and delivery. They alone were authorized to receive and enforce payment of the dividends when declared, like endorsees of negotiable notes or bills. Until the defendant should redeem or take up the certificates he could not demand payment upon them; for no such right existed in him and the debt or claim could not, in a legal point of view, be deemed to belong to him. In this respect, the present case is like that of the promissory note in *Chance* v. *Isaacs*, 5 Paige, 592, which the complainant had endorsed and passed away, and where it was held that he could not afterwards make it the subject of a set-off against the voluntary assignee of the maker in trust for the benefit of creditors. To authorize a set-off at law, the debt or demand must exist at the time of the commenemcent of the suit, and must then belong to the defendant or party sued: 2 R. S. 354. Such, I think, is not the case here. Nor am I able to perceive how the defendant can be allowed to make a set-off under the provisions of the revised statutes already mentioned in relation to the duty of assignees, trustees, &c., where mutual credits have been given or mutual debts exist. The demand, it must be remembered, is not now upon the policies of insurance, but upon the substituted instruments; and these had no existence before the receivers acquired title, but were given by them afterwards. They have grown out of a settlement made with the receivers; are matters conventional with them; and upon the terms of the certificates, as between the receivers and the defendant, the latter must be deemed to have waived his right to claim more than the dividends which may be fairly payable to him in common with the other creditors of the company.

Under this view of the case, it is unnecessary to consider, at large, the objections which have been raised to the set-off, on the score of the sale and conveyance of the mortgaged premises to Mr. Adriance. It is only with respect to one of the mortgage debts—the one which Mr. Adriance assumed and agreed to pay—that this objection could possibly arise; but, as between the company and the defendant, it was still the debt of the defendant, as he remained personally liable for it upon his

bond and by virtue of the covenant contained in his mortgage; and as that liability may be enforced in the present suit, I do not see why he might not make a set-off as well after as before such sale, especially since he made an arrangement with the purchaser, before the bill in this cause was filed, by which, as between them, the defendant again assumed the debt and exonerated the purchaser from the payment.

I shall decree a reference to a master to compute the amount due on the bonds and mortgages, for principal and interest; the master giving credit for and deducting the amount of dividends due on the certificates, if the defendant desires the same, but no further set-off or deduction is to be allowed.