BERNARD ROTHSCHILD et al., Respondents, *v.* JACOB W. MACK, Assignee, etc., Appellant.

An action in the nature of an action of assumpsit lies against one who has obtained money from another by a fraud, and such a claim is a proper subject of an offset in an action brought by the party against whom it exists; the tort may be waived and the action or set-off, founded on an implied promise to return the money wrongfully obtained.

An assignee of such a party of a cause of action on contract takes it subject to such a set-off.

On September 6, 1884, the firm of R. Bros. & Co., to whom plaintiffs were indebted in the sum of $2,796.77, which indebtedness fell due about January 1, 1885, delivered to plaintiffs a note for $5,000, indorsed by said firm, with a request that plaintiffs would indorse and procure it to be discounted for the benefit of said firm, representing that the note was perfectly good and plaintiffs would run no risk in indorsing it, and promising to pay it at maturity, which representations were false and fraudulent, as both the makers and indorser were insolvent. Relying on the representations made, and also upon the fact that they were debtors to R. Bros. & Co., plaintiffs, indorsed the note, procured it to be discounted and sent the avails to said firm. On September 19, 1884, said firm made a general assignment to defendant for the benefit of creditors, preferring creditors other than plaintiffs to an amount more than the value of its assets. On September 20, 1884, the makers of the note made a general assignment, their assets were, at the time, covered by mortgages for more than their value. Said note was not paid when due; was duly protested, and was then paid by plaintiffs, who thereafter requested defendant to apply sufficient of the amount so due to them to the extinguishment of the amount due from them to him as assignee; this he refused. *Held,* that an action was maintainable

to compel such application; that defendant's assignors having obtained the money by means of the fraud, at once became liable to repay the same, and the fact that plaintiffs' indebtedness was not due when the assignment was made to defendant did not affect their right of set-off. As to the right of set-off in equity, the fact that a debt owing to an insolvent is not due at the time he makes an assignment is immaterial; the setting it up by the debtor is a waiver of any defense upon the ground that the debt is not due, and such waiver may lawfully and properly be made.

*Chance* v. *Isaacs* (5 Paige, 592) distinguished.

(Submitted April 25, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 22, 1886, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

This action was brought to compel defendant, as assignee of the firm of Rindskopf Bros. & Co., to apply in payment and extinguishment of plaintiffs' indebtedness to defendant, as such assignee, so much of plaintiffs' claim against his assignors as should be necessary for that purpose, and to enjoin him from disposing of the account against plaintiffs and from taking any proceedings to collect the same. The court found the following, among other facts: On the 6th of September, 1884, the plaintiffs, who were residents of and carried on business in Rochester, were indebted to the firm of Rindskopf Bros. & Co., of New York, in the sum of $2,796.77. On the 19th of August, 1884, the firm of Buchman Bros. & Co., of Cincinnati, Ohio, made their note of that date and thereby promised to pay in four months, to their own order, $5,000 at the Hanover National Bank of New York, and they then indorsed the same and delivered it to Rindskopf Bros. & Co. who indorsed it, and on the 6th of September, 1884, the latter firm, at the city of New York, delivered it to plaintiffs and requested them to indorse it, and to raise at their Rochester bank for Rindskopf Bros. & Co. the amount of such note, and to give to the latter the proceeds of the discount, and they promised to pay the note at maturity. They further stated, at the same

time, that the note was as good as the Bank of England, and that the plaintiffs would run no risk in indorsing the same. The plaintiffs thereupon indorsed and took the note to Rochester and delivered it to the Traders' National Bank of that city as security for the loan to them of the amount of the note, less the usual discount.    The bank then credited plaintiffs' account in its books with such amount, and the plaintiffs then, and on the 10th day of September, 1884, sent it to the firm of Rindskopf Bros. & Co., who received and used the same.    The plaintiffs indorsed the note and procured it to be discounted, and sent the proceeds to Rindskopf Bros. & Co., relying on the representations made as to the character of the note, and also upon the fact that the plaintiffs were themselves liable as debtors to Rindskopf Bros. & Co. in the amount above stated, although the indebtedness was not then due and would not become due until some time in the last of December, 1884, or first part of January, 1885.    The firm of Buchman Bros. & Co., at the date of the note, and for a long time prior thereto, were and ever since have been insolvent. On the 20th of September, 1884, they made a general assignment, their liabilities exceeding $550,000, and their assets amounting to less than $100,000, and such assets were subject to chattel mortgages given to secure debts other than this note, amounting to $200,000, so that there was no possibility of a dollar of the assets of the firm being applied to the payment of this note.    The firm of Rindskopf Bros. & Co. were at the time of their delivery of the note to the plaintiffs, and ever since have been, insolvent, and on the nineteenth of September they made a general assignment to defendant for the benefit of creditors, and in such assignment they preferred creditors other than the plaintiff to an amount of about $900,000, and their whole indebtedness amounted to over $1,100,000, and their assets to about $671,725.26.    The note above mentioned became due December 22, 1884; it was not paid and was duly protested, and Rindskopf Bros. & Co. duly notified; it was then paid by the plaintiffs in full, together with the protest fees, and no part thereof has ever been paid

to plaintiffs.   After the payment of the note, and prior to the commencement of this action, the plaintiffs requested the defendant, as assignee, to apply the amount due plaintiffs from Rindskopf Bros. & Co., on account of said note, to the extinguishment of the indebtedness of plaintiffs to him as such assignee, and the defendant refused to do so.   Unless their liability to the assignee on account of their indebtedness to Rindskopf Bros. & Co. can be set off against their claim upon Rindskopf Bros. & Co., by reason of this note transaction, the plaintiffs will lose the whole amount paid by them to that firm by reason thereof.

The trial court gave judgment in favor of plaintiffs, granting the relief prayed for.

*Sterns & Myers* for appellant.   A court of equity will decree a set-off only in the case of mutual credits.   (2 Story's Eq. 694; Waterman on Set-offs, 124; *Green* v. *Farmer*, 1 Black. 651.) At the time of the assignment, the plaintiffs having no present claim due and payable by the assignors, they had no right to set-off, even in a court of equity.   (*Chance* v. *Isaacs*, 5 Paige Ch. 592 ; *Martin* v. *Kunzmuller*, 37 N. Y. 336 ; *Myers* v. *Davis*, 22 id. 489 ; *Beckwith* v. *Union Bank*, 4 Sandf. 604 ; 9 N.Y. 211 ; *Watts* v. *Mayor, etc.*, 1 Sandf. 23 ; *Swords* v. *Blake*, 3 Edw. Ch. 118 ; *Lane* v. *Bailey*, 47 Barb. 395 ; *Wells* v. *Stewart*, 3 id. 40 ; *Patterson* v. *Patterson*, 59 N. Y. 574 ; *Jordan* v. *Bank*, 74 id. 467 ; *Bradley* v. *Angel*, 3 id. 475 ; *Keep* v. *Lord*, 2 Duer, 78.)   The assignee stands in the position of a *bona fide* purchaser of the claim against plaintiffs. (*Chance* v. *Isaacs*, 2 Edw. Ch. 357.)   Equity will not countenance a set-off which will give one creditor of an insolvent or bankrupt an advantage over others.   (*Lane* v. *Bailey*, 47 Barb. 402.)

*David Hays* for respondents.   There is a natural equity where there are cross-demands that one debt should compensate the other, and that the balance alone should be paid by the party who owes the larger debt.   (*Lindsay* v. *Jackson*, 2 Paige,

581; *Holbrook* v. *Ins. Co.*, 6 id. 220, 227–229, 231; *Gay* v. *Gay*, 10 id. 369, 376.) Insolvency of one of the parties is a sufficient ground for the allowance of a set-off in equity against assignees of insolvents. (*Smith* v. *Felton*, 43 N. Y. 419, 422.) The fact that the plaintiffs' claim against the defendant's assignors did not mature until after the assignment does not affect their right to a set-off. (*Merrill* v. *Souther*, 6 Dana, 305; *Smith* v. *Felton*, 43 N. Y. 419, 422; *Coster* v. *Griswold*, 4 Edw. Ch. 364, 373; *Ex parte Stevens*, 11 Ves. 24; *Teazle* v. *Dillard*, 5 Leigh, 30; *T., C. & D. R. R. Co.* v. *Rhodes*, 8 Ala. 206; *Beaver* v. *Beaver*, 23 Penn. St. 167; Waterman on Set-off, § 22; *Coats* v. *Donnell*, 48 Super. Ct. 46, 54; 94 N. Y. 168; *Shieffellin* v. *Hawkins*, 1 Daly, 289, 293, 295; 3 N. Y. 475; *Littlefield* v. *A. C. Bank*, 97 id. 581, 585; *Shipman* v. *Lansing*, 25 Hun, 290, 292.) In such cases courts of equity presume that it was the intention of the parties that the reciprocal debts should be offset against each other, and an agreement to that effect is implied, which is binding on the assignee. This is a case of "mutual credit." (*Littlefield* v. *Albany Bank*, 97 N. Y. 581, 585; Willard on Eq. [Potter's ed.] 1015; *Davison* v. *Alfaro*, 16 Hun, 353; 80 N. Y. 660; *Holbrook Case*, 6 Paige, 220, 229.) The plaintiffs' equities are not affected by the fact that, at the time of the general assignment to the defendant, they were liable on the note only as sureties. (*Wylde* v. *R. R. Co.*, 53 N. Y. 156, 164.) The facts created a cause of action for money had and received in favor of the plaintiffs against Rindskopf Bros. from the moment the money came into the latter's hands, and such cause of action may be set-off. (*Harway* v. *Mayor*, 1 Hun, 628; *Andrews* v. *Artisans' Bank*, 26 N. Y. 298; *Wood* v. *Mayor*, 73 id. 556; *C. N. Bank* v. *N. P. Bank*, 32 Hun, 105; *Ex parte Stephens*, 11 Ves. Jr. 24.) It was not necessary to prove knowledge by Buchman of the falsity of his representations. It is enough that the note was worthless when plaintiffs advanced the money on it. (*Galoupeau* v. *Ketchum*, 3 E. D. Smith, 175; *Roberts* v. *Fisher*, 43 N. Y. 159.) The relation of debtor and creditor exists between maker and

indorser before maturity. ( *Van Wyck* v. *Seward*, 18 Wend. 375, 383–385; *Young* v. *Heermans*, 66 N. Y. 374, 384; *Ex parte Stephens*, 11 Ves. Jr. 24; *Ex parte Hanson*, 12 Ves. 346.)

´ Peckham, J. It is impossible to escape the conclusion that a gross fraud .was perpetrated upon the plaintiffs by the firm of Rindskopf Bros. & Co., in the transaction which led to their obtaining on the eve of their failure from the plaintiffs, by reason of the note in question, the sum of nearly $5,000. The court has not, in so many words, found that the representations were fraudulent, but the specific facts that were found lead to no other inference, and they cannot be squared with an honest. purpose on the part of the defendant's assignors. And when the evidence is examined the inference as to the existence of fraud is simply conclusive. The evidence is confined to that which was given for the plaintiffs, there having been none introduced on the part of the defendant. Examining the findings, in connection with the evidence, it is clear that when the member of the firm of Rindskopf Bros. & Co. made his representations to.one of the members of plaintiffs' firm as to the value of the note, his statements imported actual personal knowledge of the facts in regard to which he was speaking, and it would naturally convey such impression. The truth of his representations depended upon the financial ability of the makers or indorsers of the note. If both or either were in such condition as to render it morally certain that they could and would pay it at maturity, then the representations might be regarded as true. If neither were, the contrary would be the case. .

It must be assumed that he knew the financial condition of his firm at that time. With no evidence of any special change in such condition the firm fails in less than a fortnight after the representations were made, and can pay scarcely fifty cents on the dollar; and, added to that, it gives preferences to the entire exclusion of the plaintiffs. This alone casts a rather strong reflection upon the *bona fides* of the transaction on the

part of the defendant's assignors. The member who made the representations knew that, so far as his firm was concerned as indorsers, the note was wholly without value. At the same time he either knew or he did not know of the financial condition of the makers of the note. If he did know it, then he knew that the note, as to both makers and indorsers, was without value. If he did not know its condition, he yet assumed to have actual knowledge of the truth of his statement that the note was as good as the Bank of England; and he also knew that if it were, it would be because the makers were beyond all question good, as he knew his own firm was insolvent, and hence when he made the representations he did assume to have actual knowledge of the condition of the maker's firm. He certainly meant to convey the impression of actual knowledge of the truth of the representations he made as to the value of the note, and he either knew such representations were false or else he was conscious that he had no actual knowledge while assuming to have it and intending to convey such impression. If damage ensue, this makes an actionable fraudulent representation. (*Marsh* v. *Falker*, 40 N. Y. 562; *Meyer* v. *Amidon*, 45 id. 169.)

It thus appears that the defendant's assignors procured from the plaintiffs' firm nearly $5,000 by reason of false and fraudulent representations relied on by the plaintiffs. This fact will be assumed to have been found by the court below if necessary to sustain the judgment, because it is supported by the evidence, and is, indeed, conclusively proved thereby. (*Oberlander* v. *Spiess*, 45 N. Y. 175.)

Having obtained this money by such fraud, the effort is now made in their behalf to use it all and to pay every dollar of it to their preferred creditors, leaving their indebtedness to the plaintiffs wholly unprovided for, and at the same time their assignee, the defendant, is to recover from the plaintiffs in cash the full amount of their indebtedness to those assignors; and yet it was partly upon the fact of the existence of plaintiffs' indebtedness to defendant's assignors that they indorsed and procured the money on this note. It is difficult

to imagine a more unjust and inequitable result than that contended for by defendant, and a court of equity would deliberate long before consenting to assist at such a consummation. Fortunately it is not necessary to stretch the law in the slightest degree to prevent such gross injustice. An action in the nature of an action of assumpsit lies against one who has obtained money from another by a fraud, and such a claim is a proper subject of set-off in an action brought by the party against whom it exists. An assignee of such party takes a cause of action subject to such defense. This money thus obtained is, in contemplation of law, money received for the use of the party who is defrauded, and the law implies a promise on the part of the person who thus obtains it to return it to the rightful owner. The tort arising from the manner in which the money was obtained may be waived and the action founded upon the implied contract. (*Harway* v. *Mayor, etc.*, 1 Hun, 628 ; *Bk. of Dallas* v. *National Park Bk.*, 32 id. 105 ; *Wood* v. *Mayor, etc.*, 73 N. Y. 556). In this case the defendant's assignors having obtained money to the amount of nearly $5,000 from the plaintiffs by means of the fraud above stated, at once became liable to repay the same, and the law will imply a promise to repay it to the plaintiffs. This cause of action (the tort being waived) was on contract, and it existed the moment the assignors obtained the money from the plaintiffs, and, of course, it was in full life when they assigned their property to the defendant, who took it subject to all defenses existing against it while owned by the assignors. (*Chance* v. *Isaacs*, 5 Paige, 592, 594; *Gay* v. *Gay*, 10 id. 369 ; *Smith* v. *Felton*, 43 N. Y. 419.) It has been frequently held that, as to the right of set-off in equity, the fact that the debt owing to the insolvent is not due when he makes an assignment is entirely immaterial. The setting it up as an offset is a waiver by the debtor of any defense upon the ground that the debt is not due, and such waiver of the right to demand the full time in which to pay his debt can lawfully and properly be made by the debtor. (*Lindsay* v. *Jackson*, 2 Paige, 581, 584 ; *Smith* v. *Felton, supra.*) In equity the

right to a set-off does not depend upon the statute, but upon the equities existing in each particular case, and the fact of the insolvency of one of the parties, so that no satisfaction can be obtained by a direct proceeding against the defendant for recovery of the debt, frequently gives rise to the right of set-off aside from any other fact.   (Cases above cited.)

The case of *Chance* v. *Isaacs* (5 Paige, 592), is in no way inconsistent with the views above expressed.   At the time of the assignment by Isaacs, the complainant had already indorsed and transferred the note made and delivered by Isaacs to him, and he was only contingently liable thereon if not paid at maturity.   Isaacs having been guilty of no fraud in executing and delivering the note to the complainant, was only liable on the note, and at the time of the assignment the complainant was not the holder of it and it was not due.   The complainant having subsequently taken up the note at maturity, asked to set off his debt to the assignor Isaacs upon two notes made by complainant against the note which he had thus taken up. The prayer was refused, because the note did not belong to the complainant at the time of the assignment by Isaacs, although he was contingently liable for its payment, and it was stated that no equitable right of set-off existed when the assignment was made which attached to the complainant's notes in the hands of the assignee.   The court also said that the fact that the note executed by Isaacs was not due when the assignment was made, would not prevent the offset if the plaintiff had only become the owner of the Isaacs' note at the time of the assignment, because the Isaacs note would be due long before the complainant's notes were payable.

In the case now before us we have seen that a cause of action, in the nature of one in assumpsit, existed in favor of the plaintiffs herein against the defendant's assignors at the very time of the making of the assignment, and this cause of action we hold may properly be offset against the debt due from plaintiffs to defendant, as assignee, to the extent necessary to extinguish such indebtedness.   Upon the ground of

SICKELS — VOL. LXX.   2

the existence of a cause of action on contract against the defendant's assignor at the time of the assignment, we hold the case was a proper one for a set-off, but we do not, therefore, wish to be understood as denying the correctness of the holding at General Term. We simply do not decide the case upon that ground, and we neither affirm or disaffirm its correctness.

The conclusion arrived at by the General Term was right, and its judgment should be affirmed.

All concur, excepting GRAY, J., dissenting.

Judgment affirmed.