PEYMAN et al. v. BOWERY BANK OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 12, 1897.)

1. FRAUD—PLEADING—ALTERNATIVE ALLEGATION.
   An answer alleging that certain representations were fraudulent or mistaken is not demurrable if it states a defense on either hypothesis.

2. SET-OFF—ACTION BY ADMINISTRATOR—CLAIMS AGAINST DECEDENT.
   The rule that a demand against a decedent which accrued after his death cannot be set off in an action by the personal representative does not apply where the action is for the proceeds of decedent's note discounted by defendant, and defendant was induced to discount the note by decedent's fraudulent representations as to his solvency, since the fraud relates back and vitiates the entire transaction, though the note matured and the fraud was discovered after decedent's death.

Appeal from trial term, New York county.

Action by Caroline F. Peyman, as administratrix, and John Cawein, as administrator, of the estate of Henry Peyman, deceased,

against the Bowery Bank of New York. From a judgment entered on a verdict in favor of plaintiffs, directed by the trial judge on the pleadings, defendant appeals. Reversed.

The action was brought by the administrators of Henry Peyman, deceased, to recover a balance of $1,578.54, which it is alleged was due to him by the defendant bank at the time of his death. The defendant alleged in its answer, as a defense and counterclaim, that Peyman had, shortly before his death, procured from the defendant, by fraud or mistake, the discount of three notes aggregating $1,750, on which he was liable as indorser. These notes had not matured at the time of Peyman's death. While admitting, therefore, that the amount claimed appeared on the books of the defendant as a credit to plaintiffs' intestate, and that a demand was made therefor, the answer alleged that, on the application to defendant for the discount of the notes, plaintiffs' intestate represented and stated to defendant that he was solvent, whereupon the defendant, believing such representations and statements to be true, and relying thereon, did then and there so receive and discount the same, and credit him with the respective amounts thereof; that, after Peyman's decease, the defendant discovered that such representations were false, and that either Peyman was mistaken as to his alleged solvency, or the representations were made with intent to deceive and defraud the defendant. Upon the trial, before any evidence was presented, the plaintiffs moved for judgment on the pleadings, which was granted, and thereupon a verdict was directed, upon which was entered the judgment appealed from.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Albert R. Genet, for appellant.
Moses Weinman, for respondents.

O'BRIEN, J. The question presented upon this appeal is whether the facts alleged in the answer, if proven, would constitute a counterclaim, set-off, or defense. It may be regarded as settled law that a demand against a decedent which falls due after his death is not available as a set-off or counterclaim in a suit brought by his personal representatives. Code Civ. Proc. § 506; Jaeger v. Bank (Com. Pl.) 29 N. Y. Supp. 303; Jordan v. Bank, 74 N. Y. 467. In the latter case it was held (headnote):

"That the defendant could not, as matter of law, and in the absence of facts entitling it to equitable relief, set off a claim against the deceased which did not become due until after his death. A demand, to be set off in such an action, must have been due and payable from the decedent in his lifetime."

"It seems that, if circumstances existed rendering it inequitable to deny the set-off, the defendant might have alleged them, and so invoked the equity powers of the court."

Relief was denied in those cases because of the failure to allege or prove fraud or show any equitable right to a set-off or cause of action existing in defendant's favor at the time of decedent's death. While expressing the rule, they are not controlling authorities against the defendant's right to set up the facts alleged as a defense in the case at bar, because, as we shall see, of the difference in the facts which differentiate the cases. The plaintiffs having, in effect, demurred to the answer, the facts therein stated must be taken, for the purposes of this discussion, as true. It therefrom appears that relying upon representations as to the solvency of the plaintiffs' intestate, which were made by mistake or fraudulently, the defendant was induced, in form, to discount notes, and place to the

credit of Peyman on its books the amount of such discount; and that after the death of Peyman, and upon a demand being made on the defendant, it discovered the falsity of the representations, refused to recognize the credit, and withdrew the same, thus in effect rescinding the entire contract.

It is insisted that because it was alleged that the false representations were either due to a mistake, or were fraudulently made, this allegation, being in the alternative, was insufficient. This contention we do not regard as sound, because the defendant is entitled to any relief consistent with the case made by its answer, and embraced within the issues. Where a pleading alleges two grounds upon which relief is claimed, one of which is good and sufficient, the pleading is not demurrable because of the insufficiency of the other. The allegations as to the latter will not vitiate or detract from the effect of the allegations as to the former. Whether defendant could rescind the contract on the ground of mutual mistake it is not necessary to determine. The answer states facts which, if proved, are sufficient to establish and sustain a defense on the ground of fraud; and the allegation of mutual mistake does not vitiate or detract therefrom. Assuming, as we must, therefore, that the defendant could have proved, as it offered to do, by competent evidence, which it was refused the right to present, that the plaintiffs' intestate obtained the money, or, more properly speaking, the credit, from the defendant by means of false and fraudulent representations as to his solvency, this showing would necessarily distinguish the case at bar from Jaeger v. Bank and Jordan v. Bank, supra; and the rights of the parties are to be determined by another principle of law, which is well expressed in the case of Rothschild v. Mack, 115 N. Y. 8, 21 N. E. 726, wherein it is said:

"An action in the nature of an action of assumpsit lies against one who has obtained money from another by fraud, and such a claim is a proper subject to set off in an action brought by the party against whom it exists. An assignee of such party takes a cause of action subject to such defense. This money thus obtained is, in contemplation of law, money received for the use of the party who is defrauded, and the law implies a promise on the part of the person who thus obtains it to return it to the rightful owner. The tort arising from the manner in which the money was obtained may be waived, and the action founded upon the implied contract."

While the rule thus stated, by reason of the element of fraud which enters into that case, as it does in the one at bar, is applicable, this case is much stronger, because, while in Rothschild v. Mack the money was actually parted with, here all that was done was to take notes, and in form to discount them, but really to place upon the books of the bank a credit to plaintiffs' intestate equal to the notes, less the discount. This credit having been obtained by means of false and fraudulent representations, it gave to defendant the right at any time to cancel it; and this right, therefore, to cancel the credit, existed in favor of the defendant at the time of the death of the plaintiffs' intestate. His personal representatives, upon his death, took such rights as he had, subject to all equities, they standing in the same position to the defendant as their intestate would had he lived. The fraud perpetrated, affecting, as it did,

the entire transaction, conferred upon the defendant the right to rescind it; and this right related back to the time when the transaction was initiated. What occurred in the beginning was the entering into a contract by the defendant by which it agreed to credit upon its books a sum equal to the notes discounted, and upon demand to pay to plaintiffs' intestate the money represented by the credit. The money, however, represented by the credit, never became the property of the deceased, but always remained the money of the bank; and therefore, when the bank elected to rescind the contract for fraud, it did not take possession of the money of the plaintiffs' intestate, but held and retained its own money, and refused to part with it on the strength of the credit which it had given Peyman. When the contract was rescinded, therefore, whether we regard the credit on the books of the bank as representing money of the plaintiffs' intestate or the bank's own money, Peyman became indebted to the defendant for the amount thereof. It can be legally and justly regarded as money or a credit which never belonged to Peyman, and in and to which his administrators have no interest or claim.

As said in Andrews v. Bank, 26 N. Y. 300:

"If the facts respecting the discount of Benson's note were such as the defendant offered to prove them, the credit which the plaintiff obtained on the defendant's books, being the result of his fraud, was unavailing, either as a contract for the payment of the sum which was in form credited, or as evidence of money of the plaintiff in the defendant's hands. The contract to pay the amount to the plaintiff upon his checks in the usual course of banking business, which would have arisen if no fraud had intervened, could not be predicated of the transaction if it should appear to have been brought about by the fraud of the party seeking to avail himself of it. Fraud vitiates every contract, and renders void, as to the guilty party, every transaction into which it enters."

These views in no way conflict with the case cited by the respondents, of Wise v. Grant, 140 N. Y. 593, 35 N. E. 1078. In that case one Rothschild purchased goods, and procured credit therefor by means of false and fraudulent representations. After the goods had been purchased, one of Rothschild's creditors procured an attachment against his property, and seized the goods which had been obtained by fraud. The vendor, who had been defrauded, then brought an action to replevy the goods from the sheriff; but it was held by the court of appeals that replevin would not lie, because "at the time of the seizure [under attachment] the plaintiff had not the right to reduce the goods into his possession." Here, however, the rights of any third party had not intervened, nor had the bank parted with anything. All it had done, induced by fraudulent representations, was to agree to loan an amount equal to the amount of the notes less the discount, and, as evidence of such agreement, it had given the plaintiffs' intestate a credit therefor on its books. Under such circumstances, it would be unequitable to hold that the bank, though it discovered the fraud, must thereafter recognize the credit, and pay over its money, which it had never parted with, in payment of a credit thus given. Legally, from the moment when, upon discovery of the fraud, it elected to rescind, the rights of third parties not having intervened, the bank no longer had any money

of the plaintiffs' intestate, nor was it indebted to him by reason of the credit given, but the transaction was annulled, and the bank was justified in asserting that neither Peyman during his life, nor his personal representatives after his death, had any cause of action which could be maintained against it.

We think, therefore, that upon the ground of fraud the answer alleged a good defense, and that it was error upon the part of the court to reject the evidence offered to prove such defense, and to direct a verdict and order judgment upon the answer. The judgment accordingly should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.