(23 Misc. Rep. 368.)

## CARR v. NATIONAL BANK & LOAN CO. OF WATERTOWN.

(Supreme Court, Special Term, Jefferson County. April, 1898.)

PRINCIPAL AND AGENT—CONFIDENTIAL RELATIONS—SALE OF AGENT'S PROPERTY.

The president, a heavy stockholder in defendant bank, who was an intimate friend of plaintiff, agreed, as a matter of friendship, to invest her money in good, first-class securities. She relied entirely on his representations that he had purchased first-class securities, which were as good as gold. He retained them in his possession, and she did not examine them. As a matter of fact, the securities were not first class, and had belonged to the bank before their transfer to plaintiff at their par value, – 5 per cent. above what the bank had paid for them. *Held*, that plaintiff

was entitled to rescind the contract, and, on returning the securities, to recover the price from the bank, since a sale by an agent of his own property to his principal without her knowledge and consent is voidable, and the fraud of the president is imputable to the bank which received the benefits.

Action by Lillian Traver Carr against the National Bank & Loan Company of Watertown to recover $12,000 with interest, alleged to have been paid to defendant to invest in securities to be purchased by president of defendant for plaintiff. Judgment for plaintiff.

Elon R. Brown, for plaintiff.

Purcell & Carlyle (John Lansing, of counsel), for defendant.

McLENNAN, J. At the times mentioned in the complaint, the defendant was a banking corporation, organized under the laws of the United States, and having its principal place of business in the city of Watertown, N. Y. Defendant's president and manager was George H. Sherman, who was also a large owner of its capital stock. In the latter part of the year 1892, the plaintiff deposited in the defendant's bank about $13,000, for the purpose of having the same invested by Mr. Sherman for her. At that time and for many years prior thereto, Mr. Sherman was regarded by the plaintiff as a true and disinterested friend of herself and of her husband, then lately deceased, and sustained to them close and confidential relations. By reason of such supposed friendship and confidential relations, he was given full power and authority to invest the money deposited by her, to sign her name to checks, to draw the same from the bank, and to deal with the money in such manner as he might see fit for the purpose of investing the same. The plaintiff was not acquainted with business methods, had had no experience in the transaction of business, knew nothing about securities or investments, and so informed Mr. Sherman, and told him that she would, and, as matter of fact, did, rely entirely upon Mr. Sherman in securing investments for her. She was led to believe by him that his only interest in the transaction in question was to promote and look after her interest. He first represented to her that he could find good, first-class securities for her, and tendered his services to her solely as a matter of friendship. Later he represented that he had found such securities, and, at the time of the transfer of the securities in question, he represented that they were first-class securities in every respect, that they were as good as gold, and led her to believe that he had procured them expressly for her, and that he had no personal interest in the transaction. As matter of fact, the securities transferred to the plaintiff, amounting to $12,000 par value, were, at the time of the transfer to her, the property of the defendant, and had been for some time prior thereto. This fact was concealed from the plaintiff by defendant's president. The defendant had purchased the securities for speculative purposes, for at least 5 per cent. less than their face value, and transferred them, through its president, to the plaintiff at their par value. The expense of the investigation which led the defendant to purchase the securities in question was paid to it by customers or creditors of the defendant, who were interested in disposing of the same. The securities trans-

ferred to the plaintiff were not first-class securities, were not as good as gold, and some of them were not as represented by defendant's president in other respects.    The plaintiff made no inquiry or investigation in regard to their value, did not even examine them as to their form or character, but purchased them relying solely upon the advice, statements, and representations of defendant's president.    Before the commencement of this action, default was made in the payment of interest upon all or substantially all of the securities purchased by the plaintiff.    She then, through her counsel, made investigation, and discovered that the securities were not as represented by defendant's president, and that they were not purchased for her, but were securities which, at the time of the transfer to her, and for some time previous thereto, were the property of the defendant.    It was also discovered that said securities were then of little value.    Thereupon, and before the commencement of this action, the plaintiff tendered to the defendant the securities which she had purchased of it, and demanded the money from the defendant which she had paid.    This was refused, and action was commenced.

Considering the relations which existed between the plaintiff and defendant's president at the time the sale of the securities in question was made, it must be held that the representations made by Mr. Sherman as to the value and character of the securities were material; that they were relied upon by the plaintiff, and induced her to make the purchases in question.    It is further held that the representations so made were not true, and that the plaintiff sustained damage by reason thereof.    Mr. Sherman stated to the plaintiff that the securities transferred to her were first-class securities; were as good as gold.    Both statements were untrue.

The case of Rothschild v. Mack, 115 N. Y. 1, 21 N. E. 726, was an action brought to recover the amount of a note which the plaintiffs indorsed and procured to be discounted, upon the representation made at the time that it (the note) was as good as the Bank of England, and that the plaintiffs would run no risk in indorsing the same.    At page 7, 115 N. Y., and page 728, 21 N. E., the court, by Peckham, J., say:

"If he [the party making the representations] did not know its condition [the condition of the makers of the note], he yet assumed to have actual knowledge of the truth of his statement that the note was as good as the Bank of England. * * * He certainly meant to convey the impression of actual knowledge of the truth of the representations he made as to the value of the note; and he either knew such representations were false, or else he was conscious that he had no actual knowledge while assuming to have it, and intending to convey such impression. If damage ensue, this makes an actual fraudulent representation."

As to some of the securities, Mr. Sherman represented to the plaintiff that they were first-mortgage bonds.    As matter of fact, they were second-mortgage bonds, and so appeared upon their face.    The plaintiff did not examine them.    They were retained by Mr. Sherman in the defendant's bank, and she relied implicitly upon the statements of Mr. Sherman.    It is held that such a representation was sufficient ground for rescinding the sale as to those securities.    In the transactions in question, Mr. Sherman represented the defendant;

and it was bound by his acts in the sale of the securities, owned by it, to the plaintiff.

In the case of Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779, the headnote is as follows:

"All persons who act for or in the name of the owner in bringing about the transaction must be deemed his agents where he accepts the fruits of their efforts, and all the methods employed by them are imputable to him. He may not, even though innocent, receive and recover upon a security given on the sale, and at the same time disclaim responsibility for the fraud by means of which the purchaser was induced to deliver it."

In this case the money of the plaintiff was permitted by her to be paid over to the defendant by reason of the false statements of Mr. Sherman, its president and manager. It has retained such moneys, and its obligations to the plaintiff are precisely the same as Mr. Sherman's would have been had he been the owner of the securities.

It is further held that the plaintiff is entitled to rescind the contract for the sale of the securities in question, for the reason that Mr. Sherman, while assuming to act as the plaintiff's agent to buy securities for her, procured the securities in question of the defendant, of which he was president and manager and owner of a large amount of its capital stock. His obligation, at the time, to the plaintiff, was to pur chase securities for her as cheaply as possible. It was for his interest to sell the securities, which he did, at the highest possible price. It was his duty, as president of and as representing the defendant, to do the same.

In the case of Conkey v. Bond, 36 N. Y. 427, the headnote is as follows:

"An agent under a general authority to purchase cannot buy from himself without the knowledge or assent of his principal. Such a transaction is a breach of duty, and the contract is subject to rescission, irrespective of any question of intentional fraud or actual injury."

And, at page 429, the court say (Porter, J.):

"There is no view of the facts in which the transaction can be upheld. He [the defendant] stood in a relation to his principal which disabled him from concluding a contract with himself without the knowledge or assent of the party he assumed to represent. He undertook to act at once as seller and as purchaser. He bought as agent, and sold as owner. The ex parte bargain thus concluded proved advantageous to him, and very unfortunate for his principal. It was the right of the latter to rescind it, on discovery of the breach of confidence. It is not material to inquire whether the defendant had any actual fraudulent purpose. The making of a purchase from himself, without authority from the plaintiff, was a constructive fraud, in view of the fiduciary relation which existed between the parties."

The case of Mayo v. Knowlton, 134 N. Y. 250, 31 N. E. 985, was a case in which the defendant agreed to purchase for the plaintiff 4,000 shares of the stock of the Silver King Mining Company. In pursuance of that agreement, the defendant transferred to the plaintiff the stock of the company belonging to himself, and received and retained to his own use the money paid therefor. It was held that, upon the discovery of such fact, the plaintiff had a right to rescind the contract, and recover back the purchase price paid.

A large number of other cases might be cited holding expressly that, where a person assumes to act as agent for another in the pur-

chase of property, he cannot sell to his principal his own property without the knowledge and consent of his principal, and that if he does so, upon the discovery of the fact, irrespective of any other circumstance or consideration, the purchaser is entitled to rescind the contract. In the case at bar, as before said, Mr. Sherman was employed by the plaintiff to purchase securities for her. Thereupon he became charged with the duty of procuring them upon the best terms possible. She had a right to assume that he had no interest antagonistic to hers that, by any possibility, could influence him in the discharge of his duty to her. At the same time he was representing the defendant as its chief executive officer, and was charged with the duty of selling its securities at the highest price possible. His personal interest was also to obtain for the securities of the defendant the best price he could. Without disclosing such interest of the defendant or that of himself, he sold the defendant's securities to the plaintiff. The defendant received and has retained the proceeds of such sale. As before said, it is held that, upon the discovery of such facts, the plaintiff was entitled to rescind the contract, and recover from the defendant the moneys which she had paid in pursuance thereof.

It follows that the plaintiff is entitled to judgment against the defendant for the relief demanded in the complaint, with costs. Ordered accordingly.