WOLF et al. v. NATIONAL CITY BANK OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. CORPORATIONS ⟝567—INSOLVENCY—SET-OFF—UNMATURED CLAIMS.

    Absent special conditions, where receivers were appointed for an insolvent corporation prior to amendment of Debtor and Creditor Law (Consol. Laws, c. 12) § 13, by Laws 1914, c. 360, as to set-off of claims between an

———————————
⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

estate, assigned for creditors, and a creditor, a debtor of the insolvent on a claim presently due, could not set off an unmatured contract claim.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2287; Dec. Dig. ☞567.]

2. CORPORATIONS ☞567 — INSOLVENCY — SET-OFF — UNMATURED CLAIMS — FRAUD.

Defendant, on discovering the fraud whereby it was induced to discount for a corporation its note, could rescind the credit extended in reliance on the fraudulent representations, and so immediately mature its claim, making it available as a set-off against the corporation's claim on open account, though receivers were appointed for it prior to amendment of Debtor and Creditor Law, § 13, by Laws 1914, c. 360.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2287; Dec. Dig. ☞567.]

3. BANKS AND BANKING ☞183—EXTENSION OF CREDIT—RESCISSION FOR FRAUD—RETURN.

Nothing of value passing to defendant bank when it discounted for a corporation its note, there is nothing required to be returned to it or its receivers, when the bank rescinds the credit for the fraud in the obtainance thereof.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 701, 703–705; Dec. Dig. ☞183.]

4. CONTRACTS ☞271—RESCISSION FOR FRAUD—NOTICE.

Where there is nothing to be returned to the party against whom rescission of credit is claimed by reason of fraud, notice of the rescission need not be given.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1190, 1191; Dec. Dig. ☞271.]

Submission of controversy between Edward Wolf and another, receivers of Blum Bros., Incorporated, and the National City Bank of New York. Judgment for defendant.

Submission of a controversy upon an agreed statement of facts. The following is the statement of facts agreed to by the parties:

"First. That heretofore, and on or about the 31st day of July, 1913, the plaintiffs were duly appointed receivers of all the property, rights, and franchises of Blum Bros., Incorporated, a corporation organized and existing in the state of Pennsylvania, to wit, in the city of Philadelphia, in an action in the court of common pleas in the county of Philadelphia, state of Pennsylvania, in equity, wherein Gabriel Blum, Ralph Blum, Emil Loeb, Ferdinand L. Loeb, A. B. Loveman, M. V. Joseph, and Emil Loeb, copartners, trading as Loveman, Joseph & Loeb, were plaintiffs, and the said Blum Bros., Incorporated, was defendant. The bill, answer, and decree in the said action are annexed hereto, marked Exhibit A, Exhibit B, and Exhibit C, respectively. That at the time of the said appointment of the plaintiffs as receivers of Blum Bros., Incorporated, as aforesaid, the said Blum Bros., Incorporated, was insolvent and unable to pay its debts as they matured. That thereafter the plaintiffs duly qualified and have thereafter been acting as such receivers.

"Second. That by virtue of said order of appointment dated the 31st day of July, 1913, the plaintiffs were duly authorized to conduct the business of Blum Bros., Incorporated, to collect their outstanding accounts, claims, and choses in action, and to bring any action or actions, proceeding or proceedings, for the collection or reduction to possession thereof.

"Third. That the defendant is a national bank, existing and doing business under a charter of the United States and having its principal office and place of business in the city of New York.

"Fourth. That from some time in the year 1903 to and including the 31st day of July, 1913, the said Blum Bros., Incorporated, of which the plaintiffs

are receivers, was a depositor of the defendant. That the annexed statement, marked Exhibit D, annexed hereto, is a true and correct statement of all the credits and deposits in the account of Blum Bros., Incorporated, with the defendant between the dates of February 1, 1913, and July 31, 1913. That, as shown by the said statement hereto annexed and marked Exhibit D, there was on the 31st day of July, 1913, on deposit with the defendant and to the credit of Blum Bros., Incorporated, the sum of $3,571.51.

"Fifth. That on or about the 24th day of February, 1913, the said Blum Bros., Incorporated, made to its own order and duly indorsed and delivered to the defendant its certain promissory note for $35,000, dated February 24, 1913, and payable six months after date, to wit, on August 24, 1913.

"Sixth. That the defendant, at the request of the said Blum Bros., Incorporated, discounted the said note and placed the proceeds thereof to the credit of the account of the said Blum Bros., Incorporated, and that the item of Exhibit D dated February 24, 1913, reading as follows: 'Feb. 24, Discount $34115.28'—represents the amount so placed to the credit of Blum Bros., Incorporated.

"Seventh. That on or about January 31, 1913, the said Blum Bros., Incorporated, for the purpose of obtaining credit, issued a statement as to its financial condition, in which it appeared that its assets exceeded liabilities by $1,162,791.36. That in discounting the said note as aforesaid the defendant relied upon the said statement of January 31, 1913, and believed that it was a true, correct, and complete statement of the financial condition of the said Blum Bros., Incorporated, on the date when it was issued. That the said statement was not in fact a true, complete, and correct statement of the financial condition of the said Blum Bros., Incorporated, on the day it was issued, but was false, misleading, and incomplete at the time when it was made, in that the statement of liabilities contained therein omitted liabilities in excess of $1,000,000, and in that on the date when it was issued the liabilities of the said Blum Bros., Incorporated, exceeded its assets; and that the said statement was known to the said Blum Bros., Incorporated, to be thus false, incomplete, and incorrect.

"Eighth. That on July 31, 1913, the defendant for the first time learned that the said financial statement was false, incorrect, and incomplete, and that it thereupon canceled the said balance of $3,571.51 appearing on its books to the credit of the said Blum Bros., Incorporated, on that day, and attempted to apply the same to the partial payment of the said note, payment of that amount being credited upon it. That it did not at any time give notice to the plaintiffs of its intention to rescind and cancel the credit given by the aforesaid note, dated February 24th, on the ground of the misrepresentations of the plaintiffs' assignors.

"Ninth. That the defendant had due notice of the appointment of the plaintiffs as receivers of Blum Bros., Incorporated, and that the plaintiffs, after their appointment as such receivers, and on or about August 26, 1914, demanded payment of the said sum of $3,571.51, which was the balance on deposit with the defendant to the credit of Blum Bros. on July 31, 1913, as aforesaid, and that the defendant refused and still refuses to pay the same, and no part thereof has been paid to the plaintiffs.

"Tenth. That no part of the said note for $35,000 has been paid to the defendant, except as aforesaid.

"The plaintiffs claim that upon the foregoing facts the defendant is indebted to them in the sum of $3,571.51, and that they are entitled to recover that amount from the defendant. The defendant claims that it was entitled to rescind the loan which it made by discounting the said note, and to apply the said balance of $3,571.51 in part payment of the said note, and that it is entitled to offset its claim on the said note against the claim of the plaintiffs for the said sum of $3,571.51."

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Julius Henry Cohen, of New York City, for plaintiffs.
John A. Garver, of New York City, for defendant.

SCOTT, J. [1] It was undoubtedly the law of this state at the time the plaintiffs were appointed receivers of Blum Bros., Incorporated, that an unmatured claim, held by the creditors of a bankrupt, could not be set off against a claim presently due from the creditors to the bankrupt. Fera v. Wickham, 135 N. Y. 223, 31 N. E. 1028, 17 L. R. A. 456; Matter of Hatch, 155 N. Y. 401, 50 N. E. 49, 40 L. R. A. 664. The rule has now been changed by statute so as to conform to the rule established by the Bankruptcy Act (Laws 1914, c. 360, amending section 13 of the Debtor and Creditor Law). If, therefore, nothing else appeared, except that at the date of the appointment of the receivers the defendant was indebted to Blum Bros., Incorporated, in the sum of $3,571.51 on open account, and held an unmatured promissory note of said corporation for a much larger sum, we should be obliged to hold that no right of set-off existed, and that plaintiffs were entitled to judgment.

[2] Something else does appear, however, and that is that defendant was induced to discount the note and extend credit for the proceeds to the corporation in reliance upon false and fraudulent representations by the corporation as to its condition. Under these circumstances it is universally held that defendant, upon discovery of the fraud, was entitled to rescind the credit extended in reliance thereon, whereupon the amount advanced became immediately due and payable and available as an offset. The precise question has been passed upon by the Court of Appeals in Rothschild v. Mack, 115 N. Y. 1, 21 N. E. 726, and Bradley v. Seaboard Bank, 167 N. Y. 427, 60 N. E. 771. This follows naturally and logically from the general rule that, where money, credit, or anything else has been obtained by a person by fraud, he has an immediate right to get it back. Wilson v. Force, 6 Johns. 110, 5 Am. Dec. 195; Weigand v. Sichel, 4 Abb. Ct. of App. Cas. 592. On this subject Judge Peckham said in Rothschild v. Mack, supra (at pages 7 and 8 of 115 N. Y., and pages 728, 729 of 21 N. E.):

"An action in the nature of an action of assumpsit lies against one who has obtained money from another by a fraud, and such a claim is a proper subject of set-off in an action brought by the party against whom it exists. An assignee of such party takes a cause of action subject to such defense. This money thus obtained is, in contemplation of law, money received for the use of the party who is defrauded, and the law implies a promise on the part of the person who thus obtains it to return it to the rightful owner. The tort arising from the manner in which the money was obtained may be waived and the action founded upon the implied contract. * * * In this case the defendant's assignors, having obtained money to the amount of nearly $5,000 from the plaintiffs by means of the fraud above stated, at once became liable to repay the same, and the law will imply a promise to repay it to the plaintiffs. This cause of action (the tort being waived) was on contract, and it existed the moment the assignors obtained the money from the plaintiffs, and, of course, it was in full life when they assigned their property to the defendant, who took it subject to all defenses existing against it while owned by the assignors."

And in Fera v. Wickham, supra, a leading authority for the rule that an unmatured claim cannot be set off against one presently due, the court said:

"In the Rothschild Case, neither plaintiffs' claim on the note, nor the assignee's claim against them, was due at the time of the assignment; but, because of the fraud practiced upon the plaintiffs in the manner in which the moneys were obtained from them, it was held that a cause of action in assumpsit arose at once in their favor for the recovery back of the moneys. It existed the moment the insolvent assignors obtained the money, and, being a proper subject of set-off in any action which might have been brought by the parties against whom it existed, it could properly be offset against the debt due from the plaintiffs to the assignee, pro tanto."

[3] Of course the right of rescission in such a case is subject to the general rule, applicable to the rescission of contracts for fraud, that the party seeking to rescind must act promptly and must return whatever of value he may have received under the contract. The defendant certainly acted promptly, for it is agreed:

"That on July 31, 1913, the defendant for the first time learned that the said financial statement (upon which it had relied) was false, incorrect, and incomplete, and that it therefore canceled the said balance of $3,571.51, appearing on its books to the credit of said Blum Bros., Incorporated, on that day, and attempted to apply the same to the partial payment of said note, payment of that amount being credited on it."

It does not appear that anything of value passed to defendant upon the discount of said note, and there was nothing, therefore, to be returned to the makers of the note or the plaintiffs.

[4] Plaintiffs claim, however, that the attempted rescission was not complete and effective because notice thereof was not given at once to plaintiffs. We are cited to no case, however, holding that such notice is necessary in a case like the present, where there is nothing to be returned to the party against whom the rescission is claimed. The effect of such rescission, where the contract was merely one extending a term of credit for a sum of money, is to cancel the credit, whereupon the debt becomes instantly due. The creditor is not bound to give any notice of the rescission, but may wait, as the defendant apparently did, until a demand is made upon him, and then assert his right to a set-off.

It follows that defendant is entitled to judgment as prayed for in the submission, with costs. Settle order on notice. All concur.