CHARLES E. HADCOCK, as Executor of EMMANUEL HADCOCK, Deceased, Respondent, *v.* LUMAN OSMER, Appellant.

1. ACTIONABLE FRAUD — REPRESENTATION WITHOUT KNOWLEDGE. Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not and it is actually untrue, he is guilty of falsehood, even if he believes it to be true; and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud.

2. GENERAL RECOMMENDATION OF CREDIT — ACTION FOR DECEIT. A written recommendation of credit, addressed simply to a surname preceded by "Mr.," and stating as a fact that the person recommended is solvent, when the writer does not know whether the statement is true and it is actually false, will justify any man of such surname in acting upon the recommendation, when delivered to him with the apparent authority of the writer, in the absence of any direction from the latter as to which one of the name it shall be given to; and, if acted upon by such person to his injury, it will support an action for deceit.

*Hadcock* v. *Osmer*, 4 App. Div. 435, affirmed.

(Submitted June 25, 1897; decided October 5, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 27, 1896, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Watson M. Rogers* for appellant. Proof of fraud was wholly wanting, and the court should have nonsuited the plaintiff as requested. (*Starr* v. *Peck*, 1 Hill, 270; 2 Pars. on Cont. [5th ed.] 784; *Hewlett* v. *S. C. S. Co.*, 84 Hun, 248; *Marsh* v. *Falker*, 40 N. Y. 562; *Shultz* v. *Hoagland*, 85 N. Y. 464; *Constant* v. *University of Rochester*, 133 N. Y. 640.) There can be no recovery without fraud. (*Kountze* v. *Kennedy*, 147 N. Y. 124; *Hotchkins* v. *T. Nat. Bank*, 127 N. Y. 337; *Brackett* v. *Griswold*, 112 N. Y. 467; *Hemenway* v. *Keeler*, 88 Hun, 405; 2 Greenl. on Ev. § 230; 2 Kent's Comm. 490; *Stitt* v. *Little*, 63 N. Y. 427; *Duffany* v. *Ferguson*, 66 N. Y. 482; 2 Addison on Torts, § 1175; *Wakeman* v. *Dalley*, 51 N. Y. 33; *Gordon* v. *Butler*, 105 U. S. 553.) There was no representation made to Emmanuel Hadcock. (Cooley on Torts, 493, 494.) The plaintiff's testator elected to sue on contract and thereby waived his action for deceit. (*Brown* v. *Mayor, etc.*, 66 N. Y. 385; *Terry* v. *Munger*, 121 N. Y. 161.) The cause of action did not survive. (*Moore* v. *Noble*, 53 Barb. 425; *Tooker* v. *Arnoux*, 76 N. Y. 397; *Truesdell* v. *Bourke*, 145 N. Y. 612; *Zabriskie* v. *Smith*, 13 N. Y. 323; *Hegerich* v. *Keddie*, 99 N. Y. 258; *Lamphere* v. *Hall*, 26 How. Pr. 509; *Graves* v. *Spier*, 58 Barb. 349; *Holsman* v. *St. John*, 90 N. Y. 461; Beach's Eq. Juris. § 322.)

*Henry Purcell* for respondent. By the facts proved all the essential elements of deceit and fraud were made out. (*Marsh* v. *Falker*, 40 N. Y. 567; *Meyer* v. *Amidon*, 45 N. Y. 169; *Wakeman* v. *Dalley*, 51 N. Y. 27; *Morgan* v. *Skiddy*, 62 N. Y. 319; *Rothschild* v. *Mack*, 115 N. Y. 1–7; *Kountze* v. *Kennedy*, 147 N. Y. 124; *Morse* v. *Dearborn*, 109 Mass. 93; *Smith* v. *Richards*, 13 Pet. 26; *Cooper* v. *Schlesinger*, 111 U. S. 148; 5 Am. & Eng. Ency. of Law, 320–324; 1 Bigelow on Fraud, 474, 481, 514, 515; *C. F. Co.* v. *Moffatt*, 147 Mass. 403.) The representation was made to Emmanuel Hadcock. (*Allen* v. *Addington*, 7 Wend. 9; 11 Wend. 374; *Eaton, C. & B. Co.* v. *Avery*, 83 N. Y. 31;

*Kelly* v. *Gould*, 18 N. Y. Supp. 349.) There was conflicting evidence given on the trial from which diverse inferences might be drawn, and the Appellate Division having affirmed the judgment below this court will not and cannot review the facts of the case. (Code Civ. Pro. § 1337; *Kinysland* v. *Murray*, 133 N. Y. 170; *Morgan* v. *Skidmore*, 3 Abb. [N. C.] 92.) The cause of action survived. (*Fried* v. *N. Y. C. R. R. Co.*, 25 How. Pr. 285; *Bond* v. *Smith*, 4 Hun, 48; *Haight* v. *Hayt*, 19 N. Y. 464; *Byxbie* v. *Wood*, 24 N. Y. 607; *Creigin* v. *B. C. T. R. R. Co.*, 75 N. Y. 192; *Brackett Griswold*, 103 N. Y. 425; *Lyon* v. *Park*, 111 N. Y. 350; Redf. Sur. Pr. [5th ed.] 434; *Moore* v. *McKinstry*, 37 Hun, 194; Code Civ. Pro. §§ 1910, 3343.) Because the defendant testified he believed at the time he made the representation that the Browns were good, he being a party and interested, the jury were not bound to believe him. (*Kavanagh* v. *Wilson*, 70 N. Y. 177; *Elwood* v. *W. U. T. Co.*, 45 N. Y. 549; *Wohlfahrt* v. *Beckert*, 92 N. Y. 490; *Canajoharie N. Bank* v. *Diefendorf*, 123 N. Y. 191.)

VANN, J. Prior to the fifteenth of September, 1888, Deloss Brown, as principal, and Joseph Brown, as surety, were indebted to the defendant on a past-due note for over $300 and payment thereof had repeatedly been demanded. After trying in vain to borrow money to pay the note, Deloss told the defendant that he did not know where they could get it, and asked if he must have it. The defendant said yes, and, upon being further asked by Deloss where the money could be had, recommended him to call on one Benjamin Hadcock. He did so and was told by Benjamin that he could not lend the money, but that his brother Emmanuel, who was stopping with him, could let him have it. Deloss reported to the defendant that he thought he could get the money of "the Hadcocks," and that they would let him have it "sometime in October." When the time came around, the Messrs. Brown started to see if they could get the money of Emmanuel Hadcock, but first went to the defendant and asked him to go along.

He said that he could not, when Deloss declared there was no use of their going alone, and thereupon the defendant wrote and delivered to the Browns a paper, of which the following is a copy: "Mr. Hadcock: The Browns are good for what money you let them have." [Signed.] 'L. Osmer." The Hadcocks did not know the Browns, but, as they knew the defendant, on the strength of this paper Emmanuel Hadcock lent them $400, taking their note therefor, and on the same day they used the most of the money to pay their debt to the defendant. Both of the Browns were insolvent at this time, and while the defendant may have believed they were good, he did not know whether they were good or not and did not try to find out. Upon the trial of this action, which was brought to recover damages for false representations by means of said paper, there was but slight dispute as to the representations, their falsity or the injury resulting therefrom, but the defendant insisted that as he did not know that his representations were false, there could be no recovery against him. Through his counsel, he asked the trial court to charge the jury "that there can be no recovery in an action of deceit unless it appears that the defendant made the representations, knowing them to be false, with intent to deceive and that the plaintiff suffered damages in consequence thereof." The court refused to so charge, except with the modification "that if he made the statement that they were good, as a fact, not as an opinion, without knowning whether it was true or not, then it was false in the sense that he made a statement of fact as though he knew it to be true, which he did not know to be true. ' That, together with what I have already said in my charge in regard to it, will enable the jury to understand what I mean." Exception was taken to the refusal to charge as requested and to the charge as made. In the body of the charge, the court after instructing the jury as to the difference between the assertion of a fact and the expression of an opinion, told them in substance that if the defendant made the representation, either knowing it to be untrue, or, without knowing whether it was untrue or not, stating it as an exist-

ing fact, intending that it should be taken and acted upon as such, they might infer an intent to defraud; "because," as the court continued, "a man has no right to state a thing as a fact, which misleads the other party to his damage, unless he knows whether it is true or untrue; and if he states it, knowing and understanding that he does not know whether it is true or not, he just as much misleads the other man as though he stated it with the knowledge that it was untrue."

An action to recover damages for deceit cannot be maintained without proof of fraud as well as injury. Actionable deceit cannot be practiced without an actual intention to deceive, resulting in actual deception and consequent loss. But while there must be a furtive intent, it may exist when one asserts a thing to be true which he does not know to be true, as it is a fraud to affirm positive knowledge of that which one does not positively know. Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud. (*Kountze* v. *Kennedy*, 147 N. Y. 124, 130; *Rothschild* v. *Mack*, 115 N. Y. 1, 7; *Marsh* v. *Falker*, 40 N. Y. 562, 573; *Bennett* v. *Judson*, 21 N. Y. 238; Addison on Torts, 1007; 1 Bigelow on Fraud, 514.) Such seems to be the case now before us, as the facts are presumed to have been found by the jury. The plaintiff's testator did not ask for information in regard to the solvency of those who wished to borrow money of him, but the defendant volunteered to give it. He was interested in the result of the loan, for the bulk of the proceeds was for his benefit. On being told that the loan would not be made without his presence, he armed the proposed borrowers with a written statement over his own signature, containing a positive assertion of a material fact, with the intention that it should be acted upon and should induce the loan of the money. Yet he did not know the

assertion, thus positively made for such an important purpose, to be true, and he did not investigate or seek to discover whether it was true or not, although he had dealt some with the Browns and had some information as to their circumstances. He intended, as the jury has found upon sufficient evidence, that the lender should understand him as communicating his actual knowledge and not as expressing his opinion, judgment or belief. Knowing that he did not know what he said he did, and what he intended to cause another to believe he did, he took the responsibility of its truth, and honesty of belief in the supposed fact, under such circumstances, cannot relieve him from the imputation of falsehood and fraud. As was said by Judge PECKHAM, in *Rothschild* v. *Mack* (*supra*): "He either knew or he did not know of the financial condition of the makers of the note. If he did know it, then he knew that the note, as to both makers and indorsers, was without value. If he did not know its condition, he yet assumed to have actual knowledge of the truth of his statement.   *   *   *   He certainly meant to convey the impression of actual knowledge of the truth of the representations he made as to the value of the note, and he either knew such representations were false or else he was conscious that he had no actual knowledge while assuming to have it and intending to convey such impression. If damage ensue this makes an actionable fraudulent representation." The language of Chief Judge ANDREWS, in *Kountze* v. *Kennedy* (*supra*), is equally applicable : " One who falsely asserts a material fact, susceptible of accurate knowledge, to be true of his own knowledge, and thereby induces another to act upon the fact represented to his prejudice, commits a fraud which will sustain an action for deceit. This is not an exception to, but an application of the principle that actual fraud must be shown to sustain such an action. The purpose of the party asserting his personal knowledge is to induce belief in the fact represented, and if he has no knowledge, and the fact is one upon which special knowledge can be predicated, the inference of fraudulent intent in the absence of explanation naturally results." The

rule is the same in other states and in England. Thus, in *Chatham Furnace Co.* v. *Moffatt* (147 Mass. 403) the court said : " The charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely matter of opinion, estimate or judgment, but is susceptible of actual knowledge, and in such case it is not necessary to make any further proof of an actual intent to deceive. The fraud consists in stating that the party knows the thing to exist, when he does not know it to exist, and if he does not know it to exist he must ordinarily be deemed to know that he does not. Forgetfulness of its existence after a former knowledge, or a mere belief of its existence, will not warrant or excuse a statement of actual knowledge." (See, also, *Bullitt* v. *Farrar*, 42 Minn. 8 ; *Hexter* v. *Bast*, 125 Pa. St. 52 ; *Wells* v. *McGeoch*, 71 Wis. 196 ; *Swayne* v. *Waldo*, 73 Ia. 749 ; *Craig* v. *Ward*, 1 Abb. Ct. App. Dec. 454 ; *Evans* v. *Edmonds*, 13 C. B. 777.)

The charge of the learned trial judge was within these rules, and the exceptions under consideration furnish no ground for a reversal of the judgment.

The court was further asked to charge that " there can be no recovery in this case in any event, unless it be proven or be found that there was an actual purpose or intent on the part of the defendant, on the 15th day of September, 1888, to defraud Emmanuel Hadcock of his property." The court so charged, but added : " Of course, that is in connection with what I have already charged, that it was not necessary it should have been determined, when he made the paper, before they got the money, as to which of the Hadcocks it was to go, but there must have been an intention to cheat and defraud the person to whom this paper should be delivered, the one or the other." The defendant excepted to the modification and now argues that it was reversible error.

In the course of his charge the trial judge had said : " If it was understood by the defendant that there was a proposition to borrow of one or more Hadcocks, and he sent out a general

paper addressed to Mr. Hadcock, why then you can say whether it was not fairly intended to be delivered to such person of the family as would loan the money ; and, if that is true, it is not essential that it should appear to you that it had been determined, at the time the paper was drawn, that the loan should be from one or the other. If you find that fairly the meaning, intention and design of the parties was that whoever loaned the money should have this paper presented to him, then it may be fairly said that the representation was made to whoever did loan the money to those persons." While the defendant had at first suggested that the money might be borrowed of Benjamin Hadcock, he was finally told that " the Hadcocks " would probably make the loan. Since the brothers Hadcock lived together as members of the same family and the paper was addressed generally to " Mr. Hadcock," it was properly left to the jury to find whether it was not the intention of the defendant that the paper should be delivered to such member of the Hadcock family as would make the loan, which was the primary object of giving the writing. As a general recommendation of credit, knowingly given to an insolvent person, will support an action for deceit in favor of any one acting thereon to his injury, so, as we think, a letter addressed simply to " Mr. Hadcock," would justify any man of that name in acting upon it, at least when it was delivered to him with the apparent authority of the writer and there was no direction from the latter as to which one of the Hadcocks it should be given. Moreover, the evidence warranted the inference that the Browns had implied authority from the defendant to deliver the letter to either one of the Hadcocks and hence to the plaintiff's testator.

We agree with the conclusion reached by the learned Appellate Division and think that their judgment should be affirmed, with costs.

All concur, except O'Brien, J., who takes no part, and Gray, J., absent.

Judgment affirmed.