(121 App. Div. 560.)

DURYEA v. ZIMMERMAN et al.

(Supreme Court, Appellate Division, Second Department. October 18, 1907.)

1. FRAUD—FRAUDULENT REPRESENTATIONS—FALSITY AND KNOWLEDGE THEREOF.

Defendants, who issued a prospectus of a corporation, whose stock they sold, are not liable in an action for deceitful representations to plaintiff, who claimed that he was induced by the false representations in the prospectus to purchase stock in the corporation, whereby he suffered loss, where there is nothing in the prospectus which can reasonably be construed as asserting that its statements were based upon, or true to, the personal knowledge of the person making them, and it is not shown that the person who prepared the prospectus from information obtained from others did not make the statements contained therein in strict accordance with his information, honestly believing them to be true, though the information and his representations based thereon were untrue, since, to sustain an action for deceit, there must be shown an intention to deceive resulting in actual deception and consequent loss.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, §§ 3–5.]

2. SAME—ACTIONS—BURDEN OF PROOF.

In this action the burden was on the plaintiff to show that the person who prepared the prospectus did not have and believe information according with the representations set forth therein.

Gaynor and Jenks, JJ., dissenting.

Appeal from Special Term, Rockland County.

Action by William Duryea against Eugene Zimmerman and others to recover for damages sustained in consequence of deceitful representations of the defendants. From a judgment for plaintiff, and an order denying defendants' motion for a new trial, defendants Zimmerman and another appeal. Reversed, and new trial granted.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Rush Taggart, for appellant Zimmerman.

Edward M. Shepard (Franklin Pierce, on the brief), for appellant Rogers.

Robert B. Honeyman, for respondent.

RICH, J. In this action the plaintiff has recovered a judgment for damages which he claims he has sustained in consequence of the deceitful representations of the defendant Zimmerman and of Rogers, Brown

& Co. (of which firm defendant Rogers was a member), by which he was induced to purchase of them $48,000 in par value of the stock of the Alabama & Georgia Iron Company, paying them therefor $20,000 in cash. No personal deceit is charged against the appellants, who are the only defendants served or appearing in the action. It is conceded that neither of them personally made any false representations, or knew of or shared in the printed prospectus, upon the contents of which the plaintiff's alleged cause of action is wholly based.

Prior to the organization of the Alabama & Georgia Iron Company, Rogers, Brown & Co. and the defendant Zimmerman jointly bought the properties of two existing companies, the Cherokee Iron Company, a Georgia corporation owning an iron furnace and iron lands in and near Cedartown, Ga., and the Augusta Mining Company, owning ore lands in Georgia and Alabama, after which the Alabama & Georgia Iron Company was organized, upon a basis of $650,000 preferred stock and the same amount of common stock. Zimmerman and Rogers, Brown & Co. paid $100,000 into its treasury and transferred to it the properties acquired from the Cherokee Iron Company and the Augusta Mining Company, receiving therefor the stock of the new corporation and the $100,000 in its treasury. It was testified upon the trial by Noah H. Swayne, who had been an officer of the corporation from the time of its organization, and its president until a few weeks before, that the value of its properties then was not less than $1,500,000, and that it was making between 8 and 10 per cent. upon the full amount of its preferred stock; that it was a paying property, and in a very prosperous condition. During the negotiations for the purchase of the two properties referred to the purchasers were wholly represented by Archer Brown (a member of Rogers, Brown & Co.), who died on September 23, 1904.

After the organization of the new company and conveyance of said properties to it, it was determined to sell some of its preferred and common stock for the purpose of repaying some portion of the cost to the original purchasers, who retained a large amount of its stock and had a substantial money investment in the property. Archer Brown had the exclusive charge of all the details connected with the acquisition of the property, the preparation of the prospectus of the new company and other details of the sale of its stock, with all of which matters neither of the defendants had any personal knowledge or connection. Thereafter Brown prepared, and caused to be printed and circulated, a lengthy prospectus of the new company, setting forth in detail its properties, the expenditures that had been made upon them, their estimated value and earnings, and many other matters, to which the names of "Rogers, Brown & Co." and "Eugene Zimmerman" were signed.

The plaintiff challenges the accuracy or truthfulness of certain statements contained in the prospectus, which are alleged to have been false and to have been made with the intent of inducing the plaintiff to subscribe to the capital stock of said company, as follows: First. That the Cherokee Company was a prosperous company, which had paid dividends to the time of the death of its president, Col. West, in 1898. (Upon the trial it appeared that Col. West died in 1892, instead of 1898.)

Second. That the actual cash outlay upon the property of the Cherokee Iron Company was upwards of $800,000. Third. That the actual cost of coke iron at the Cherokee furnace was about $7 per ton, and of charcoal iron about $9 per ton. (The statement in the prospectus is: "The cost of coke iron at Cherokee furnace in normal times is about $7 per ton, and of charcoal iron about $9 per ton. On the rates of labor, transportation, etc., now ruling, the cost will be about $1 to $2 per ton higher. * * * Allowing cost to be $11, the margin of profit is about $7 per ton.") Fourth. That large contracts for charcoal iron had already been made at prices averaging about $18.50 per ton at the furnace.

It is disclosed by the evidence that the plaintiff had no direct or personal relations with any member of the firm of Rogers, Brown & Co., or with the defendant Zimmerman. His transactions were solely with his brokers—Grant Bros.—who were represented in the purchase of the stock by their employé, Van Sickle, who had all of his dealings with one Gilchrist, who was an employé of Rogers, Brown & Co., and authorized by them to sell some of the stock on commission. The record presents several interesting questions; but, as the case must be disposed of upon an error of the trial court in its instructions to the jury, we do not regard the consideration of the other questions presented profitable or of benefit to the litigants.

The learned trial justice, in his main charge, instructed the jury that, before they could find a verdict for the plaintiff, they must find that Brown must have known that the statements contained in the prospectus were false, or, not knowing whether they were false or true, and not caring what the fact might be, made them recklessly, paying no heed to the injuries which ensued, after which he charged, as requested by defendants, that "in all actions for deceit the presumption is in favor of innocence, and on that account the intent or design to deceive the plaintiff must be affirmatively made out by evidence," and refused to charge that "if, therefore, the jury find that this prospectus was prepared from information furnished to the defendants or to Archer Brown, then the jury must presume that such information corresponded to the contents of the prospectus, and, even though such information was false, yet the defendants would not be liable therefor." We think this sentence correctly states the law applicable to this case upon one of the crucial questions involved, and that the refusal of the trial justice to instruct the jury as requested was error, requiring a reversal. There is uncontradicted evidence in the case that Brown did get information concerning these properties from several persons prior to their purchase. These persons were not called as witnesses, and there is no proof that his statements contained in the prospectus were not in strict accordance with the information thus acquired. This stock was purchased by plaintiff in 1899. Brown died September 23, 1904, and it was not until practically a year after his death that this action was commenced. If the information received by Brown was in fact believed by him, and honestly stated in the prospectus, no matter if such information and his representations based thereon were in fact untrue, there was no deceit, and the defendants were not liable in his

action, which is not based upon negligence or other fault or error of Brown, but rests wholly upon deceit practiced by him upon the plaintiff.

Actionable deceit cannot be practiced without an actual intention to deceive, resulting in actual deception and consequent loss. There is nothing contained in the prospectus which can properly be construed as asserting that its statements were based upon, or true to, the personal knowledge of the persons making them, which distinguishes this case from the case of Hadcock v. Osmer, 153 N. Y. 604, 47 N. E., 923, in which the court pointed out that the defendant assumed to have actual knowledge of the statement made, and intended that the lender should understand him as communicating his actual knowledge. The rule as stated in Constant v. University, 133 N. Y. 640, 31 N.. E.. 26, is that where the natural inference from the evidence does not necessarily lead to the presumption of a fraudulent intent, but is equally as consistent with innocence as wrongdoing, that construction must be placed upon it which will exonerate the party implicated from a dishonest intent. See, also, Morris v.. Talcott, 96 N. Y. 100, 104. In Shultz v. Hoagland, 85 N. Y. 464, it is said:

"It is not enough that they [the facts] are ambiguous, and just as consistent with innocence as with guilt. That would substitute suspicion as the equivalent of proof. They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting."

The burden was on the plaintiff to establish that Brown did not have and believe information according with the representations which he set forth in the prospectus. Kountze v. Kennedy, 147 N. Y. 124, 129, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651. And in the absence of such evidence the defendants were entitled to the charge requested.

For this error, the judgment and order must be reversed, and a new trial granted; costs to abide the event.

HOOKER and MILLER, JJ., concur, the latter in a separate opinion. GAYNOR, J., reads for affirmance, with whom JENKS, J., concurs.

MILLER, J. It being established by the testimony of the plaintiff's own witnesses, and not disputed, that the alleged fraudulent prospectus was prepared by Archer Brown from information furnished him by Edward F. Browning, it was incumbent upon the plaintiff to establish either that the prospectus did not correspond to the information furnished or that said Archer Brown knew that it was false. If there was no evidence to establish either of those propositions, the court erred, both in refusing the request to charge discussed by Mr. Justice RICH, and in denying the motion for a nonsuit. Said prospectus furnishes internal evidence that the facts stated by it were not within the personal knowledge of the signers, and any one reading it would so understand. The plaintiff, who had the burden of establishing intention to deceive, and who brought his action after the death of the person charged with that intent, omitted to call said Browning as a witness, and, if the defendants can invoke the presumption of

innocence, we must assume that the prospectus corresponded to the information furnished said Archer Brown. But I think a jury could say that a personal inspection of the properties of the Cherokee Company would have disclosed that they had been idle for a long time, and a jury might infer that the possessor of that knowledge would know that said company had not been prosperous. Whether the hearsay testimony of J. Hull Browning to the effect that said Brown inspected said properties was sufficient on this point, I do not now pass upon. In my opinion the jury must have understood from the judge's charge that they could find intention to deceive from carelessness on said Brown's part in making his investigations. This point is presented by an exception, and, if the charge warrants that construction, we must agree that an erroneous rule was charged, very prejudicial to the defendants.

But, whatever view of the questions stated supra we may take, we must agree, I think, that there is not sufficient competent evidence in this case upon which a jury could base a verdict for damages. Of the four alleged misrepresentations enumerated in the opinion of Mr. Justice RICH, there is no pretense that there was any testimony to show the falsity of the fourth, and I have searched the record in vain to find any to establish that of the second, namely:

"That the actual cash outlay upon the property of the Cherokee Iron Company was upwards of $800,000."

This, of course, refers to the expenditures made before the acquisition of the property by the Alabama & Georgia Iron Company, and the testimony of the only witness on the subject is that in 1878 $350,000 had been expended on the property, and that from that time on very large expenditures were made in improving the property by Col. West, the amount of which the witness did not pretend to state. The third alleged misrepresentation was contained in a paragraph headed "Estimated Earnings," and its statement of the cost of coke and charcoal iron at the Cherokee furnace was obviously an estimate based on the cost of the different elements entering into the production of coke or charcoal iron, namely, coke or charcoal, limestone, ore, and labor. There was no evidence whatever to show that this statement was not in accordance with the information furnished Archer Brown, nor was there any evidence of the cost, at the time referred to in said prospectus, of the different elements entering into said estimate. The only evidence upon this subject related to a time prior to 1888 and to one period after said Alabama & Georgia Iron Company began to operate the property; but there was no proof of the relative conditions. Assuming, however, that there was proof of the falsity of the representations respecting the cost of producing iron and the prosperity of the Cherokee Company, and of an intention to deceive in respect thereto, I am unable to find in the evidence any basis for estimating the effect thereof on the value of the stock. It is plain that the value of the Cherokee Iron Company furnace was relatively small as compared to that of the extensive ore lands acquired by said Alabama & Georgia Iron Company, and it is not claimed that any misrepresentations were made respecting said lands.

The court correctly charged the jury that the measure of damages was the difference between the actual value of the stock at the time of its purchase and what its value would have been if the alleged false statements had been true. There was no evidence to show the value of the properties, except the undisputed testimony of a witness called by the plaintiff to the effect that they are now worth $1,500,000. If so, the stock, which the plaintiff bought as a speculative venture at 41¾, is now worth more than par, which may account for the fact that he has elected to hold to his bargain and claim damages. There was an attempt made to show market value; but as the stock was not traded in, and concededly had no market value, such evidence must be disregarded, even though we assume that it was properly admitted. Intrinsic, not market, value had to be shown, and the plaintiff made no attempt to show this. But, if that had been shown, I do not see how a jury could have told from this evidence how much more the stock would have been worth had the representations been true. The representation that the Cherokee Company was prosperous and had paid dividends to 1898 may or may not have been material upon the question under consideration. If its failure to pay dividends was due to extravagant and poor management, as the testimony of the only witness called on the subject at least suggests, it could have had little bearing on the actual worth of the properties; whereas, if it had been due to some inherent difficulty in the operation of the properties themselves, the representation would have been material. But how that or the representation respecting the cost of producing iron at the Cherokee furnace affected the value of the stock was not shown, although the question was susceptible of definite proof. The plaintiff cannot have his bargain and recover damages, without proving any.

The judgment should be reversed.

GAYNOR, J. (dissenting). It does not seem to me that the refusal to charge was error. It does not seem to me possible that it can be error, and I should be greatly surprised to find any authority even lending countenance to a claim that it is.

The request was that if the jury find "that this prospectus was prepared from information furnished to the defendants or to Archer Brown, then the jury must presume that such information corresponds to the contents of the prospectus, and even though such information was false, yet the defendants would not be liable therefor."

Is it so, that one who sells worthless stocks by a false prospectus, is exonerated of liability for deceit for false statements in such prospectus, by simply proving that some one, any one, "told him so"? Must a judge charge that? It is for those who make such requests to make them technically accurate in order to get a good exception on their' refusal. We are often told things by untrustworthy people, whom we should not and do not believe; and reputable people tell us things which we should not always believe, and which, indeed, we know to be untrue, or that they are not qualified to speak of. Are we to send this case back for the next trial judge to charge this sweeping request?

Nor does it seem to me that refraining from saying in a circular that

the statements therein are made on personal knowledge, requires a conclusion to be drawn that they are not, but the contrary. Any one who says a thing without qualification makes it, prima facie, his own positive statement.