### PAPPADEMETRIOU v. BOUBOULIS et al.

(Supreme Court, Equity Term, Oneida County. February, 1910.)

1. FRAUD (§ 25*)—ELEMENTS—INJURY.
   Damage must result from the false representations to the party acting thereon in order to constitute actionable fraud, so that plaintiff, who merely claimed to be trustee for another, who was, in turn, trustee for a third person as to an interest in a business, could not have been injured by the fraudulent representations of defendant by which he procured from plaintiff a transfer of the business so as to authorize him to set aside the sale, and the fact that defendant had not paid the debts of such third person as agreed would not aid plaintiff, though the creditors whose claims were to be paid might have a cause of action against defendant.

   [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 24; Dec. Dig. § 25.*]

2. FRAUD (§ 58*)—ACTION—SUFFICIENCY OF EVIDENCE.
   Evidence in an action to set aside a bill of sale for fraud *held* not to show fraud as claimed.

   [Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 55-59; Dec. Dig. § 58.*]

Action by James Pappademetriou, as trustee of Peter Dorton, against Nicholas Bouboulis and another. Complaint dismissed.

J. W. Rayhill, for plaintiff.
Edward Lewis, for defendants.

MERRELL, J. On the 15th of January, 1909, Nicholas Dorton, a native of Greece, was the owner and proprietor of a stock of goods and certain fixtures and appliances for the manufacture and sale of candy, known as "The Candy Kitchen," at 156 Genesee street, Utica, N. Y. On said last-mentioned date said Dorton, by an instrument in writing, sold and conveyed said property, including the fixtures, appliances, furniture, stock on hand, and good will of the business, to two nephews, Nicholas Bouboulis and John Carageorgas, who thereupon formed a copartnership for the purpose of continuing said business.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The sale was made subject to a chattel mortgage covering the appliances and fixtures held by one Loius Limbres for $4,000, and also upon the further consideration of $4,000 made up of $74 in cash, which was to be paid to said Dorton upon the execution and delivery of the bill of sale, and several other sums of money in which said Dorton was indebted to various of his countrymen, aggregating the sum of $4,000. Bouboulis and Carageorgas at once took possession of the business, and conducted the same until on or about May 12, 1909, when Carageorgas was called to Greece upon some mission, the nature of which does not clearly appear. On said May 12, 1909, Carageorgas executed a bill of sale of all his right, title, and interest in said "Candy Kitchen" and business, including the good will thereof, to one James Pappademetriou. Thereafter and until the 29th of July, 1909, said business appears to have been conducted by Bouboulis and Pappademetriou. On said last-mentioned date, by an instrument in writing, Pappademetriou sold and transferred, upon the expressed condition of $1 and other good and valuable consideration, the said property and business to Nicholas Bouboulis. Both the bill of sale from Carageorgas to Pappademetriou and from Pappademetriou to the defendant Bouboulis are clear and unequivocal in their terms, and purport to be bills of sale of the business and property in question.

It is claimed, however, on the part of the plaintiff that the instrument of May 12, 1909, and which purports to be a bill of sale from Carageorgas to Pappademetriou of his half interest in the business, did not correctly express the true understanding and intent of the parties; that Carageorgas, who was about to depart for Greece, desired to temporarily, and during his absence, place his interest in the business in the hands of one of his fellow countrymen to hold the same and look after his interests therein during his absence and until he should return to America, when he was to resume control thereof.

It is further claimed on the part of the plaintiff that, with that end in view, Carageorgas chose a younger brother, Peter Carageorgas, who, for some reason, appears to have changed his name to Peter Dorton, taking the surname of his uncle, Nicholas Dorton, and it is claimed on the part of the plaintiff and his witnesses that Carageorgas, Bouboulis, Nicholas Dorton, and young Peter Dorton proceeded to the office of Attorney Lewis, in Utica, for the purpose of transferring Carageorgas' interest in said business to young Dorton to hold the same during the former's absence from America. It is claimed on the part of the plaintiff that, after the necessary paper had been prepared, it was suggested that young Peter Dorton was then but 16 years of age, and that his entry into the partnership with Bouboulis might complicate matters because of his youth, and it is claimed that thereupon it was decided that James Pappademetriou, an employé in the candy establishment, should take the bill of sale of Carageorgas instead, and that he should hold the same for young Peter Dorton. It does not appear from the evidence that any such intent was made known to the scrivener, Attorney Lewis. Certainly not a word appears in the bill of sale executed May 12, 1909, from Carageorgas to Pappademetriou of the former's interest in the business. In the complaint in this action plaintiff does not ask to reform the instru-

ment of May 12, 1909, to conform to what he claims was the real intent of the parties, but seeks to substitute the alleged understanding and intent of the parties in place of the clearly expressed provisions of the instrument.

This action is brought to set aside the bill of sale of July 29, 1909, from Pappademetriou to the defendant, and compelling the defendant and his sister, Pearl Bouboulis, to whom it is claimed the defendant sold a part of the business, to reconvey a one-half undivided interest in and to the said property to the plaintiff, together with the proceeds of sale, income, and profits derived from the business, or that the defendants pay to the plaintiff the sum of $3,000, and that an accounting be had of the profits and income derived from the business since the 29th of July, 1909. It is claimed as the basis of this action that the instrument of July 29, 1909, was obtained by the defendant of Pappademetriou by fraud and false representations, and that Bouboulis represented to Pappademetriou that the instrument he was signing was a transfer of a lease of another business place in the city of Utica. It is claimed that Pappademetriou was ignorant of the true import of the paper which he executed, that he relied upon the representations of Bouboulis, and was caused thereby to execute the paper in question.

[1] It seems to me that the claim of the plaintiff lacks substance in several particulars. In the first place, an essential element to actionable fraud is that damage shall result from the false representations made to the party who claims to have been injured, and that thereby said injured party, relying and acting by reason of the false representations, has suffered damage.

From a careful reading of the evidence in this case I am unable to find, assuming that the contention of the plaintiff is to be believed, where either Pappademetriou, the trustee, or Peter Dorton, his ward, have suffered damage. I do not find in the plaintiff's evidence where a dollar was paid by Peter Dorton at the time of the alleged transfer to Pappademetriou as his trustee. I cannot see how, admitting all plaintiff's claims to be true, Peter Dorton has been injured. If any one has suffered damage under the contention of the plaintiff, it is John Carageorgas, the man who departed for Greece, as plaintiff claims, for a short and temporary absence, but who strangely appears never to have returned. All that Peter Dorton claims is that he was chosen by Carageorgas to hold the business during the latter's absence. While Pappademetriou claims to have held the interest in the copartnership in trust for Peter Dorton, the greatest interest that Peter Dorton appears to have is as trustee for his brother, Carageorgas. Therefore it seems to me that the essential element of actionable fraud is lacking, so far as the plaintiff is concerned, in this case, to wit: That no damage has been suffered by the plaintiff. Wheadon v. Huntington, 83 Hun, 371, 31 N. Y. Supp. 912; Brackett v. Griswold, 112 N. Y. 454, 469, 20 N. E. 376; Hadcock v. Osmer, 153 N. Y. 604, 47 N. E. 923; Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651.

The fact that only a part of the obligations of Nicholas Dorton, specified in the bill of sale of the 15th of January, 1909, and which

Bouboulis and Carageorgas agreed to pay and discharge as a part of the consideration of the transfer to them, were paid, and that a considerable part of this consideration remains undischarged, is of no moment, it seems to me, so far as this controversy is concerned and between the parties hereto. Nicholas Dorton may have cause to complain and be entitled to insist upon the payment of his said indebtedness, and unquestionably, under the well-known doctrine of Lawrence v. Fox, 20 N. Y. 268, the several creditors whose claims were to be paid, as specified in the first bill of sale, have a cause of action against Bouboulis.

[2] But, considering the case as a whole upon its merits, it seems to me that the contention and claim of the plaintiff is not borne out by the testimony in the case. The rather ingenious claim of the plaintiff and his witnesses, including Peter Dorton, the ward, does not, on the whole, bear the marks of candor, and seems to me to be entirely unreasonable. If, as claimed by the plaintiff, Carageorgas desired to only temporarily part with his business and finally agreed upon Pappademetriou to serve as trustee, what was the necessity or reason for naming Peter Dorton, the 16 year old boy, in the transaction at all? And, if the intent was that Pappademetriou should hold the title as trustee for young Dorton, why was not some word of that intent expressed to the scrivener who prepared the papers? And again, coming down to the instrument of July 29, 1909, the testimony of Pappademetriou explaining the manner in which he claims to be misled, is, it seems to me, entirely unworthy of credit. As to both claims of the plaintiff as to the instrument of May 12, 1909, that it did not express the intent of the parties and that he had no knowledge of the true provisions of the bill of sale of July 29, 1909, it seems to me his testimony and that of the witnesses he offers in corroboration are unworthy of credit. The testimony of Peter Dorton and the plaintiff in all essential particulars is disputed by the defendant, and it would seem to me that the corroboration furnished by the defendant's witnesses is of a character which forces me to the conclusion that the plaintiff's contention is not in accordance with the facts.

The defendant, in his relation of the several transactions, gives a coherent and straightforward account. It appears that, when the business was sold by Carageorgas to Pappademetriou, full consideration was paid. This is evidenced by entries in the books kept by Bouboulis and on which entries plaintiff and Bouboulis set about September 1, 1909, when Bouboulis purchased the interest of the plaintiff in the business. The claim of young Peter Dorton that he was a copartner in the business after the departure of his brother for Greece seems to me to be conclusively negatived by the settlement between the defendant and himself, and the payment of the $102 to Peter Dorton, or Carageorgas, by the check of the defendant of September 29, 1909, and the receipt which he at that time signed, inscribed in the books of the concern, reciting in effect that the $102 was for balance due him for wages and in full of all claims against the defendant. Dorton was a young man who had obtained considerable common and high school education since he had been in this country, and appeared to be bright and fully capable of understand-

ing the English language and the meaning and terms of the receipt which he signed. As to many essential facts testified to by the defendant, he is corroborated by other witnesses. One witness in particular who corroborates in many particulars the story of the defendant as to the transactions in question is Constantine Coumoumoundouros, who was accepted by all parties as an interpreter on the trial of this case, and appeared to be in all respects candid and truthful. He testified as to a conversation with young Peter Dorton while the latter claimed to be in partnership with defendant Bouboulis. In that conversation Dorton expressed himself as displeased with work among the Greeks, and said he expected to try to obtain a place among Americans where his pay and surroundings would be better, and he would have more time to go to school. Coumoumoundouros also testifies to a conversation with the plaintiff shortly after this action was brought in which the plaintiff denied that he had any hand in commencing the suit, and denied that he was trustee for young Dorton. Coumoumoundouros also tells of another conversation between the plaintiff and defendant at about the time of that last mentioned in which defendant asked the plaintiff if he owed him anything and why he had summoned him, and as to whether or not he had sold his interest in the business to him, and that the plaintiff replied, "Yes; I agree with that, but you ought to take the old man back" (meaning Nicholas Dorton), and in this last conversation that the plaintiff disclaimed any knowledge of the bringing of this action. Coumoumoundouros also relates another conversation which he had on the street in Utica with the plaintiff. In this conversation witness stated the plaintiff told him that he had sold his interest in the store to the defendant. All of this testimony and conversations related by this apparently disinterested witness Coumoumoundouros was denied by the plaintiff, but it seems to me that the testimony is entirely worthy of belief, and gives substantial corroboration to the defendant in his contention in this case.

For the reasons stated, I am compelled to the conclusion that the several instruments transferring the business in question clearly expressed the true intent of the parties; that no fraud was perpetrated in relation thereto; and that, so far as the plaintiff is concerned, no cause of action has been established.

The complaint should be dismissed, with costs.