ERNST BYSTROM, Appellant, *v.* HAROLD G. VILLARD, Respondent, Impleaded with JEAN WOLKENSTEIN, Defendant.

First Department, December 8, 1916.

Fraud — sale of stock induced by false prospectus — when officer of corporation issuing prospectus liable to purchaser of worthless stock — misstatements made on information received from others — sale not resulting in personal profit of defendant.

Where the director and president of a mining corporation who issues and signs a prospectus for the purpose of inducing the public to buy stock falsely states that the mining company has in its possession a one-hundred ton stamp mill and machinery which will be complete and running

First Department, December, 1916. [Vol. 175.

within a few weeks, and will handle $400,000 worth of ore already delivered at the mill, and that the entire plant will be in complete operation within sixty days, when as a matter of fact no such mill has ever been contracted for, and the company only owns a twenty-ton mill capable of treating seventy-five tons daily, and only a comparatively small amount of ore has been delivered, he is liable in damages to a person who has been induced to purchase the stock, which turned out to be worthless, on the faith of this prospectus and upon the personal assurance of the defendant that the statements therein were true. Such liability exists although the defendant may have believed the statements to be true when he made them, and although he based his belief upon information furnished to him by others.

The defendant does not escape liability because the statements contain a hidden equivocal meaning which may make them true, if they are false in the sense in which they would be taken by the average person.

Such officer is liable for the false representation although he did not personally profit by the sale of stock to the plaintiff.

Cases collated and analyzed, per SCOTT, J.

PAGE and DOWLING, JJ., dissented, with opinion.

APPEAL by the plaintiff, Ernst Bystrom, from a judgment of the Supreme Court in favor of the respondent, entered in the office of the clerk of the county of New York on the 20th day of October, 1915, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of October, 1915, denying plaintiff's motion for a new trial made upon the minutes.

*Henry K. Heyman* [*Norbert Heinsheimer*, attorney, with him on the brief], for the appellant.

*Chase Mellen*, for the respondent.

SCOTT, J.:

The action is for damages for false representations whereby the plaintiff was induced, as he alleges, to purchase stock in a mining company which proved to be valueless.

The respondent who made the representations was a director and the president of the corporation. Although the record of the trial is quite a long one there is, in the end, little substantial dispute as to the facts. The story is not an unfamiliar one.

The Ocean Wave Mining Company was organized to operate a mining property in Mexico. The respondent Villard acquired

stock therein and became its president and one of its directors. He paid one or two visits to the property and made examinations of it, having apparently no special or technical knowledge as to mining matters.

In the year 1909 one Wolkenstein, also a stockholder in the company, was authorized to sell some of its treasury stock. Wolkenstein, although named as a defendant, was not served with process and did not appear at the trial except as a witness for the respondent. Villard, a person of some social prominence in the community in which he lived, signed and issued a prospectus giving the customary optimistic account of the properties and prospects of the company, and also sent to his friends and neighbors personal letters of similar import. Plaintiff was one of Villard's neighbors. He was a musician by profession and evidently had little business training or experience. He owned a home of modest value. To him came Wolkenstein seeking to sell stock, and it was finally arranged that he should purchase from Wolkenstein stock of the par value of $16,000, giving therefor his home. This stock, as it turned out, was not treasury stock, but Wolkenstein's own.

Plaintiff had received one of the letters sent out by respondent, and had also been shown the optimistic prospectus issued by Villard, but for further assurance, before completing the purchase of the stock, had called on Villard and inquired whether the statements contained in the letter and prospectus were true, and was assured that they were. Relying upon these statements and assurances he bought the stock, which soon afterwards became practically worthless.

The false representations charged are contained both in the prospectus and the letters, and read as follows: "The 100 ton stamp mill, the machinery for which has been delivered and paid for, will be completed and running within the next few weeks and will handle first the $400,000 worth of ore already delivered at the mill. Conservative estimates by competent mining engineers are to the effect that the ore beds are so large as to supply all the ore that can be milled for years to come. The entire plant should be in complete operation within sixty days, and the Company will be able to at once begin the payment of dividends."

The statements that a 100-ton stamp mill had been delivered and paid for, and that $400,000 worth of ore had been already delivered at the mill were false. No such mill had ever been contracted for. A 20-ton stamp mill, capable of treating, as a maximum, seventy-five tons of ore a day, had been bought, and a comparatively small amount of ore had been delivered. As to the statement that after the plant had been put in operation within sixty days, the company would be able to at once begin the payment of dividends, while of course only promissory, and not the statement of an existing fact, yet it was so extravagantly impossible in the then condition of the property that it imported at least an implied misrepresentation as to the present assets and equipment of the property.

The respondent makes no serious claim that the statements made by him in the prospectus and the letters were in accordance with the facts. His whole defense is based upon the proposition that he believed the statements to be true when he made them, and that he based this belief upon information furnished him by engineers and others. This he claims to be a complete defense to this action for damages, and the sole question in the case is whether or not this claim to immunity is valid under all the circumstances of the case. The trial court held that it was, and submitted the case to the jury with instructions that plaintiff could not recover if Villard made the statements honestly, believing them to be true, such belief being justified by the evidence then in his possession. The accuracy of this submission was raised by numerous exceptions to refusals to charge propositions requested by plaintiff.

The respondent of course relies upon the general rule that scienter is one of the essential elements of such an action as the present, and hence argues that it is incumbent upon plaintiff to show not only that the representations were false in fact, but that respondent knew them to be false. That rule, however, is subject to some qualification. It is to be observed that respondent's allegations as to the 100-ton stamp mill and the $400,000 worth of ore already delivered at the mill site are made positively, as of respondent's own knowledge, without qualification, and of course carried unusual weight because made by the president of the company who presumably knew accurately

the facts concerning the company's properties.  In a recent case (*Hadcock* v. *Osmer*, 153 N. Y. 604, 608) the rule applicable to such a case is stated as follows: " Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud.  (*Kountze* v. *Kennedy*, 147 N. Y. 124, 130; *Rothschild* v. *Mack*, 115 N. Y. 1, 7; *Marsh* v. *Falker*, 40 N. Y. 562, 573; *Bennett* v. *Judson*, 21 N. Y. 238; Addison on Torts, 1007;* 1 Bigelow on Fraud, 514.) "

The necessity for careful accuracy of statement in cases like the present is even more pronounced when the person making the statement holds a position with regard to the matters concerning which the statement is made which imports or implies that he has exceptional knowledge on the subject.  For this reason the tendency of the courts both in this country and in England is to hold promoters and directors of companies to a very strict accountability for the accuracy of their representations made with a view to inducing strangers to the enterprise to invest therein, and to refuse to extend immunity for false statements because the person making them believed them to be true, if in fact they were false; and this is but reasonable and just, for such promoters and directors have the means at command to ascertain the facts accurately, and the positions they hold with reference to the enterprise imply that they have knowledge when they undertake to make positive statements. In *Ottinger* v. *Bennett* (144 App. Div. 525; 203 N. Y. 554) the defendant was a director of a corporation which had declared and paid a dividend which it had not earned.  The plaintiff, relying upon this as a representation by the directors who voted the dividend that the company had in fact earned the profit, bought some shares of its stock which afterwards declined in value and became practically worthless.  It was held that the plaintiff had a good cause of action against one of the directors for damages for the deceit.

---

* See 4th Eng. ed. with Am. notes (Dudley & Baylies).—[Rep.

In *Downey* v. *Finucane* (205 N. Y. 259) the Court of Appeals said: "The promoter of a company, whether he be a director or not, who knowingly issues or sanctions the circulation of a false prospectus containing untrue statements of material facts naturally tending to mislead and to induce the public to purchase its stock or other securities, is unquestionably responsible to those who are injured thereby." In *Churchill* v. *St. George Development Co.* (174 App. Div. 1, 6) the Appellate Division in the Fourth Department stated the rule thus: "Neither may any defendant escape responsibility through plea of lack of personal knowledge of the truth of declarations made by him. The makers of these representations, whether by prospectus or orally, either knew or did not know the actual facts with reference to this tract of land. If they did know, and misrepresented, then they are clearly liable for such fraud. If they did not know its condition, then they knew of such lack of knowledge on their own part. Then their statement, made as if from personal knowledge, is equally fraudulent as though intentionally falsely made. If damage ensues from either of these two situations, the person making representations must be held to responsibility." To the same effect is *Lambert* v. *Elmendorf* (124 App. Div. 758).

The same rule obtains in Massachusetts. In *Chatham Furnace Co.* v. *Moffatt* (147 Mass. 403) the Supreme Court of that State said: "The charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive. The fraud consists in stating that the party knows the thing to exist, when he does not know it to exist; and if he does not know it to exist, he must ordinarily be deemed to know that he does not. Forgetfulness of its existence, after a former knowledge, or a mere belief of its existence, will not warrant or excuse a statement of actual knowledge." (Citing cases.)

It is urged upon the argument, though seemingly not very confidently, that the statements contained in the prospectus

and letters were susceptible of a construction which would make them accord with the real facts. We do not think they were, but even if they had been this would not serve to relieve the respondent from liability. The apparent meaning was just as plaintiff understood, and that there may have been a hidden equivocal meaning which the average person, reading the prospectus, would not discern does not mitigate the offense of uttering a false prospectus. In *Downey* v. *Finucane* (*supra*) the Court of Appeals made this quite clear, as follows: "Speaking of an equivocal prospectus which was condemned as fraudulent by the House of Lords in *Aaron's Reefs* v. *Twiss* (L. R. App. Cas. [1896] 273, 285) Lord HALSBURY calls the language ambidextrous; and this expression aptly characterizes that in the present case. In the case cited it was argued, as it is suggested here, that there was no specific allegation of fact which is proved to be false; but the lord chancellor protested against this being regarded as the true test and declared that the question was whether taking the whole thing together was there a false representation. 'I do not care by what means it is conveyed — by what trick or device or ambiguous language; all those are expedients by which fraudulent people seem to think they can escape from the real substance of the transaction. If by a number of statements you intentionally give a false impression and induce a person to act upon it, it is not the less false although if one takes each statement by itself there may be a difficulty in showing that any specific statement is untrue.'"

We have to deal in this case with the facts that Villard, as president, director and stockholder of the Ocean Wave Mining Company, for the purpose of inducing outsiders to purchase stock in the company, signed and circulated a prospectus and personal letters containing as positive statements certain misrepresentations of material facts relating to the property and equipment of the company; that he had no personal knowledge as to whether the matters so stated were true or false; that in making them he relied on information which he believed and had received from engineers and others, but he did not qualify his statements by saying in terms or in substance that he was saying only what he had been told and believed; that plaintiff

relying upon these false statements was induced to purchase stock in the company to his damage. In my opinion the jury should have been definitely instructed that upon this state of facts the plaintiff was entitled to recover his damages, and that defendant's liability could not be made to depend on whether or not he believed, even in good faith, that the false statements, which he had made positively, were true. The fact that respondent did not himself profit by the sale of the stock to plaintiff, and that the stock so sold was the property of Wolkenstein, is immaterial. In *Laska* v. *Harris* (215 N. Y. 554) the defendant, by way of counterclaim, alleged that the plaintiff had induced him by false representations to purchase property from a third person. The court said: "If the plaintiff made the false representations alleged, with a fraudulent design and damage resulted from them to the defendant the plaintiff is liable, though he may not have profited from them or had any interest in the deception and although the fraud may have induced the defendant to contract with others as well as the plaintiff." (Citing cases.)

We are, therefore, of the opinion that the case was presented to the jury upon an erroneous theory, and that if submitted upon what we conceive to be the law applicable to the undisputed facts a verdict in favor of the respondent would have been against the evidence. In such a case we are not disposed, in the interest of justice, to inquire too closely whether or not the question was raised by proper exceptions. (*Swift* v. *Poole,* 172 App. Div. 10.)

Our conclusion is that the judgment and order appealed from must be reversed and a new trial granted, with costs to appellant to abide the event.

Clarke, P. J., and Laughlin, J., concurred; Page and Dowling, JJ., dissented.

Page, J. (dissenting):

The action was to recover damages for the sale of stock of the Ocean Wave Mining Company induced by alleged false and fraudulent representation contained in a prospectus and a circular letter signed by the defendant Villard as president of the

said company. There were other representations alleged to have been made by the defendant Wolkenstein, but Wolkenstein was not served and no authority was shown for Wolkenstein to act on Villard's behalf; in fact, the stock sold was Wolkenstein's personal property. The specific statement upon which plaintiff seeks to recover from Villard is that "the 100-ton stamp mill, the machinery for which has been delivered and paid for, will be completed and running within the next few weeks and will handle first the $400,000 worth of ore already delivered at the mill." These mines had been worked for a number of years and abandoned in 1893 on account of the depreciation of the price of silver, because of the repeal of the "Sherman Purchase Law." A large quantity of ore had been mined and was on the dumps ready to be milled. It was proven by John Kasser, a witness called on behalf of the plaintiff, that this ore assayed from $5 to $300 a ton, and that they had reports of mining engineers, who came out to make an analysis of the ore, in which they stated that this ore was worth from $300,000 to $400,000. He also testified that a twenty-stamp mill had been delivered at the mine capable of milling seventy-five or more tons. The defendant Villard testified that he had prior to the making of the prospectus and issuing the letter visited the mines. He had the reports of the engineers and also examined the original smelter returns from 1883 to 1895 and the United States Geodetic survey which stated that $268,000 of ore had been taken from these mines. As a result of these investigations he formed an independent opinion as to the value of the property which he believed in; that after this visit there was put in a twenty-stamp mill which was planned to treat 100 tons per day. The plaintiff not only failed to prove, but the defendant disproved an essential element of an action of this character, namely, scienter. We must bear in mind that this was a common-law action for fraud and deceit. "The essential constituents of such an action have been understood from the time such actions were first maintained. They are tersely stated by CHURCH, Ch. J., in *Arthur* v. *Griswold* [55 N. Y. 400] viz.: 'Representation, falsity, scienter, deception and injury.' There must have been a false representation, known to be such,

made by the defendant, calculated and intended to influence the plaintiff, and which came to his knowledge, and in reliance upon which he, in good faith, parted with property or incurred the obligation which occasioned the injury of which he complains. All these circumstances must be found to exist, and the absence of any one of them is fatal to a recovery." (*Brackett* v. *Griswold*, 112 N. Y. 454, 467.) We cannot better state the limitation of a common-law action for deceit than by a repetition of the words of Chief Judge ANDREWS in *Kountze* v. *Kennedy* (147 N. Y. 124): "The gravamen of the action is actual fraud, and nothing less will sustain it. The representation upon which it is based must be shown not only to have been false and material, but that the defendant when he made it knew that it was false, or not knowing whether it was true or false and not caring what the fact might be, made it recklessly, paying no heed to the injury which might ensue. Misjudgment, however gross, or want of caution, however marked, is not fraud. Intentional fraud, as distinguished from a mere breach of duty or the omission to use due care, is an essential factor in an action for deceit. The man who intentionally deceives another to his injury should be legally responsible for the consequences. But if through inattention, want of judgment, reliance upon information which a wiser man might not credit, misconception of the facts or of his moral obligation to inquire, he makes a representation designed to influence the conduct of another, and upon which the other acts to his prejudice, yet, if the misrepresentation was honestly made, believing it to be true, whatever other liability he may incur he cannot be made liable in an action for deceit. The law affords remedies for the consequences of innocent misrepresentation. A contract induced thereby may, in many cases, be avoided, and the equitable powers of courts are frequently interposed for the rescission of contracts or transactions based upon mistake or innocent misrepresentation. While the common-law action of deceit furnishes a remedy for fraud which ought to be preserved, we think it should be kept within its ancient limits, and should not by construction be extended to embrace dealings which, however unfortunate they may have proved to one of the parties,

were not induced by actual intentional fraud on the part of the other."

The case of *Hadcock* v. *Osmer* (153 N. Y. 604), relied upon by the majority of the court, correctly states the rule, which is entirely in harmony with *Kountze* v. *Kennedy* (*supra*). In the *Hadcock* case the defendant gave a general recommendation of credit, knowing that it was to be used to obtain a loan by which he was to benefit. In that recommendation he stated that the person seeking the loan was solvent, without knowing anything about his financial condition. The statement was, therefore, made by defendant "not knowing whether it was true or false and not caring what the fact might be, made it recklessly, paying no heed to the injury which might ensue." (*Kountze* v. *Kennedy, supra.*) I cannot accept this rule as applying to the facts in the instant case, where after a personal investigation of the property, inquiry of those who had been familiar with the operation of the mine in the past, examination of reports by mining engineers and official smelter reports, the defendant had formed an independent conclusion as to the truth of a statement which he believed and acted upon himself.

Relief may be given by way of rescission in equity for fraudulent representation where scienter is not alleged or proved. (*Canadian Agency, Ltd.,* v. *Assets Realization Co., No. 1,* 165 App. Div. 96, 102, and cases cited.) But, as shown above, scienter is a material fact which must be alleged and proved to entitle a party to damages in a common-law action for deceit. Because this element was lacking in many of the requests to charge, which otherwise were correct, the learned trial justice properly refused them. I have examined the record and find no reversible error. There is persuasive force in the respondent's argument that the statement of the value of the ore in the dumps was a statement of opinion upon which an action would not lie. I prefer, however, to base my conclusion upon the ground that whether the statement was of an opinion or a fact, plaintiff having failed to prove that the statement was made with knowledge that it was false, or so recklessly made without knowledge or care of what the fact might be, as to charge the defendant with liability, and

defendant having proved the contrary to be the fact, the judg-
ment and order should be affirmed.

DOWLING, J., concurred.

Judgment and order reversed, new trial ordered, costs to
appellant to abide event.   Order to be settled on notice.